## NATIONAL BANK *v.* WATSONTOWN BANK.

1. The statute of Pennsylvania (*infra,* p. 220), declaring that the stock of a bank shall be transferable only on the books in such manner as the by-laws shall ordain, and that no stockholder shall be authorized to transfer his stock until his debt is discharged or secured to the satisfaction of the directors, does not prohibit the bank from waiving its right, nor the cashier from acting for them, by an authority, either express or implied.

2. A. borrowed money of B., to whom he assigned and delivered his certificate of stock as collateral security, with authority to sell in case of default in payment. On A.'s default B. sent the certificate to the cashier of the bank, who made the requisite entries on the stock ledger which he kept, it being the only book, except the book of certificates, showing the transfers of stock, and it was his practice to keep the account of such transfers without consulting in each case the directors. The latter had adopted no by-law on the subject. On B.'s instructing the cashier to sell the stock, the latter informed him that it would not be necessary to send him a certificate, but to forward a power of attorney, which B. did. Part of the stock was sold, the proceeds were remitted, and the proper entries made on the stock ledger. A. subsequently became insolvent. He was indebted to the bank, and on the directors refusing to approve the transfer B. brought suit to compel the issue to him of the customary certificate of stock. *Held,* 1. That as between A. and B. the title to the stock passed by A.'s delivery of the certificate with the accompanying power of attorney. 2. That the acts of the cashier were binding on the bank, and the transfer by him made on the stock ledger vested in B. a complete and unincumbered title to the stock, and a right to the usual certificate as evidence of his ownership. 3. That had B. acquired merely an equity based on his contract, the legal right of the bank to assert its lien was lost by its own laches, and the enforcement of it would, under the circumstances, operate as a fraud.

APPEAL from the Circuit Court of the United States for the Western District of Pennsylvania.

The facts are stated in the opinion of the court.

*Mr. John A. J. Creswell* and *Mr. William H. Armstrong* for the appellants.

*Mr. Oscar Foust* and *Mr. Robert P. Allen* for the appellee.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

This is a bill in equity filed by the Cecil National Bank, of Port Deposit, Maryland, and Jacob Tome, the appellants, to compel the Watsontown Bank, a corporation of Pennsylvania, to issue a certificate for two hundred shares of its capital stock to the said Cecil National Bank, to which the latter claims to be entitled.

These shares of stock belonged to Powell & Co., a partnership doing business at Williamsport, Pa., as private bankers, the certificate whereof, then held by them, they assigned and delivered to Jacob Tome, president of the Cecil National Bank, as collateral security for two promissory notes of $5,000 each, of which they were makers, discounted for them by that bank, and which it held at their maturity. One of the notes was dated Dec. 4, 1875, at thirty days, the other Dec. 20, 1875, at forty days, and each contained a stipulation authorizing the sale of the stock in case of default.

These notes becoming due and remaining unpaid, the Cecil National Bank, on Jan. 31, 1876, by its president, J. Tome, transmitted the certificate of stock, in a letter to R. B. Claxton, cashier of the Watsontown Bank, requesting a new certificate in his name, and asking what the stock was worth. To this Claxton replied to Hopkins, cashier of the Cecil Bank, on Feb. 1, 1876, acknowledging the receipt of the certificate, stating that a new board of directors had been elected the day before; that they would organize on February 7, when a president would be elected, and when, as he added, "I will forward your stock certificate. Mr. Pardee, our present president, is not here, and I have no signatures on the stock book." He continued: "I think I can find a purchaser for Mr. Tome's stock at from 100 to 102, and possibly more. If you will let me know exact figures I will endeavor to dispose of it promptly, if he so desires." On February 9, Tome answered, authorizing a sale, and directing the proceeds to be remitted to him; and wrote again on February 14, enclosing a power of attorney to sell

and transfer the stock, and stating that it would not be neces-
sary to forward a certificate to him. This letter was an answer
to one from Claxton of February 11, asking for the power of
attorney from Tome to transfer the stock, and stating that as
he intended to sell, it was useless to forward his certificate.
He added that he thought he had arranged for the disposition
of $1,000 of the stock that day, and would be as prompt as
possible in placing the balance. The power of attorney sent
by Tome was in the usual form, and authorized R. B. Claxton
" to sell, transfer, and assign the two hundred shares of stock
of the Watsontown bank standing in my name in the books
of said bank," &c.

In point of fact, on February 4 the account of Powell & Co.
on the stock ledger of the Watsontown Bank was charged by
Claxton, the cashier, with " $10,000 to J. Tome; " and an
account opened with J. Tome, on the same book, crediting
him, of the same date, " by Powell & Co., $10,000." On Feb-
ruary 21 this account is debited with two items: " To Henry
Scott $500," and " A. Scott $500 ; " and the same day Claxton,
the cashier, remitted to Tome the proceeds of the sale of these
twenty shares of stock. On February 16 he had written
acknowledging the receipt of the power of attorney previously
requested. The accounts of Henry Scott and of Amos Scott,
on the same ledger, are credited with the stock sold to them
respectively.

It appears that this stock ledger was the only book kept by
the Watsontown Bank showing the transfers of stock, except
a book of certificates, the stubs of which showed to whom the
corresponding certificate had been issued, and what certificate
had been surrendered in lieu of it. The stock ledger was kept
by the cashier.

Martin Powell, one of the firm of Powell & Co., was a
director of the Watsontown Bank, and R. B. Claxton, Jr., its
cashier, was also a member of that firm, and known to be such
by the directors of the bank. It was his usual practice, as
cashier, to make and keep the account of transfers of stock
without consulting in each case with the board of directors.

On March 12, 1876, Powell & Co. failed, and April 13, 1876,
made a voluntary assignment for the benefit of creditors.

On the next day, April 14, the Watsontown Bank, by its attorney, addressed a letter to J. Tome, as follows : —

"WATSONTOWN, PA., April 14, 1876.

"MY DEAR SIR, — Some time since you sent to our bank a certificate of stock originally issued to Powell & Co., and by them transferred to you for $10,000. This transfer was never approved by our president or board of directors, and we will not do so, or cannot under the act of assembly regulating banks in this Commonwealth, so long as Powell & Co. are indebted to us, either as drawer, maker, or indorser, for matters due and unpaid. And, as this is the existing state of facts, we cannot permit a transfer to be made until we are secured to the satisfaction of our board of directors for all their (Powell & Co.'s) liabilities."

The statutory provision referred to is sect. 10, art. 10, of an act regulating banks, approved April 10, 1850, and reads as follows : —

"The stock of the bank shall be assignable and transferable on the books of the corporation only, and in the presence of the president or cashier, in such manner as the by-laws shall ordain ; but no stockholder indebted to the bank for a debt actually due and unpaid shall be authorized to make a transfer or receive a dividend until such debt is discharged or security to the satisfaction of the directors given for the same."

No by-law on the subject is shown to have been passed by the directors of the Watsontown Bank.

It is assumed that the account between the bank and Powell & Co. shows that the latter was indebted to the former on Feb. 1, 1876, for a balance amounting to $5,215.67.

The Circuit Court rendered a decree denying the relief as prayed for, and requiring the bank to transfer one hundred and eighty shares of the stock, being the original amount less the twenty shares sold to the Scotts, only upon payment of the sum found due to it, from Powell & Co., with interest.

The complainants bring the present appeal to review this decree.

As between Powell & Co. and Tome, representing the appellants, the property in the shares of stock, undoubtedly, passed to the latter without the formality of a transfer on the

books of the Watsontown Bank.  As collateral security for the payment of their notes, discounted and held by the Cecil National Bank, and with the power to sell for the purpose of payment, the title passed by the delivery of the certificate, with the accompanying power of attorney.  *Johnston* v. *Laflin,* 103 U. S. 800.

The title, however, was unquestionably subject to the lien given by its charter to the Watsontown Bank.  That provision, when insisted on and enforced, would be effectual to subject the beneficial interest in the stock to the payment of any indebtedness from the stockholder, making the transfer, to the bank for a debt which, at the time of the proposed transfer, was actually due and unpaid.

According to the terms of this provision the bank was properly represented, in the act of transfer, by its cashier; and he was authorized to bind the bank, in consummating the transaction, by virtue of his office, in the absence of any by-law, according to the usage of the business and the practice of the particular bank, presumed to be known to and approved by the directors.  *Case* v. *Bank,* 100 U. S. 446.

The clause which denies to the stockholder the privilege of making a transfer of his stock, while a debtor, until his debt is discharged or secured to the satisfaction of the directors, does not forbid the bank to waive its rights, or prevent the cashier from acting for the directors, by virtue of an express or implied authority.  In this, as in other matters of ordinary business, within the general scope of his official duty, he is their appropriate representative.  There is no circumstance which, in our opinion, limits the general and usual authority of the cashier in respect to the transfer of the stock in question.  The fact that he was a member of the firm of Powell & Co., whose stock it had been, can have no such effect; for his relation to the parties was well known to the directors of the bank, and he had no interest in the transaction adverse to his official duty.  Whether the stock should become the property of the Cecil National Bank, free from the claim of the appellees, or should remain subject to the claim of the latter, was equally indifferent to him, as in either event it served to pay an equivalent amount of debt for which he was liable.  It is

not alleged, and is not shown, that the appellants were aware of Claxton's relation to the firm of Powell & Co., or of their indebtedness to the bank whose officers they were, and there is no ground for imputing fraud to, or suspecting collusion with, them.

Our conclusion, therefore, is, as to this point, that the Watsontown Bank was lawfully represented by Claxton, its cashier, in this transaction, and is effectually bound by his acts. It remains to consider the nature and effect of what was in fact done.

A complete transfer of the title to the stock upon the books of the bank, it is not doubted, would have the effect to vest it in the transferee, free from any claim or lien of the bank. The consent of the bank, made necessary to such transfer, is the waiver of its right, as its refusal would be the assertion of it. The transfer, when thus consummated, destroys the relation of membership between the corporation and the old stockholder, with all its incidents, and creates an original relation with the new member, free from all antecedent obligations. This legal relation and proprietary interest, on which it is based, are quite independent of the certificate of ownership, which is mere evidence of title. The complete fact of title may very well exist without it. All that is necessary, when the transfer is required by law to be made upon the books of the corporation, is that the fact should be appropriately recorded in some suitable register or stock list, or otherwise formally entered upon its books. For this purpose the account in a stock ledger, showing the names of the stockholders, the number and amount of the shares belonging to each, and the sources of their title, whether by original subscription and payment or by derivation from others, is quite suitable, and fully meets the requirements of the law. Accordingly, when the cashier of the Watsontown Bank received from Tome the certificate, with the authority for its transfer to him duly executed by Powell & Co., and, in pursuance of the request to make the transfer, charged it in the account against the former owner, and gave to Tome the corresponding credit, the latter became a stockholder in the bank, invested with the legal title to the stock, and with all the rights, powers, and privi-

leges belonging to that character. Nothing more remained to be done to make the conveyance of title complete and absolute, and, so far as the bank was concerned, it was irrevocable. It had consented to the transfer, and the transfer had been made. Thenceforward the rights of Tome in respect to the stock in question were all they could have been if it had belonged to him by virtue of an original subscription. The claim of the bank upon it, based upon the existing relation with the former owner, ceased when, with its consent and through its act, that relation ceased.

The Cecil National Bank, then, had become the owner of the legal title to the stock which Powell & Co. transferred, and was entitled to demand recognition from the bank of its rights as a stockholder, and to the customary certificate, as evidence of its ownership.

On the supposition that not the legal title, but only an equity, based on an executory contract for a transfer, passed to the appellants, by virtue of the transaction with the cashier of the Watsontown Bank, their right to the relief prayed for is not less clear. Aside from the recognition of the title, as complete, by accepting and acting upon the power of attorney given by Tome to sell and transfer it as his stock, and the sales made to the Scotts under it, whose title is not denied, and yet cannot be better than that of their vendor, which is disputed, the subsequent conduct of the Watsontown Bank raises an equity against it, which is superior to its legal right to insist upon a lien on account of the debt of Powell & Co. When Tome made his claim on behalf of the Cecil National Bank for a transfer of the stock, if the appellee had intended to insist on its legal rights and assert its lien, then was the proper time to do it; for it then, at least, had notice of the interest and the claim of the appellants. If it had done so promptly, the latter might still have had an opportunity to obtain other security, or to enforce by other means their claims against their debtors, who, although in default, do not appear to have been as yet *in extremis*. So far, however, from adopting this course, the Watsontown Bank pursued one exactly the reverse. It permitted the parties by its actual exercise to rest in the belief that their right to dispose of the stock for

the purpose of paying the debt due them would not be questioned, until the failure and assignment of Powell & Co. made any other resort useless; and, having induced them to alter their condition by reliance upon assurances, which were equivalent to a declaration that it had no adverse claim, the appellee cannot now be permitted to assert a lien, lost by its own laches, and the enforcement of which would operate as a fraud.

For these reasons, we conclude that the appellants are entitled to the relief sought by their bill, and that the decree, so far as it denies it, must be reversed and the cause remanded with instructions to modify the decree in accordance with this opinion; and it is

*So ordered.*