MICHIGAN TRUST CO. *v.* STATE BANK OF MICHIGAN.

BANKS AND BANKING—TRANSFER OF STOCK—LIENS.

> Under section 7 of the general statute relating to corporations (1 How. Stat. § 4866), providing that a transfer of stock shall not be valid, except as between the parties thereto, until the same shall have been entered on the books of the corporation, and section 9 of the general banking law (3 How. Stat. § 3208a8), providing that no transfer of stock shall be valid against a bank so long as the registered holder shall be liable to the bank for any debt which shall be due and unpaid, and that no stock shall be transferred on the books of the bank, without the consent of the directors, where the registered holder is in debt to the bank for any matured and unpaid obligation, the lien of a bank extends to a debt of the registered holder which has matured subsequent to an assignment of his stock, but prior to a demand by the assignee for a transfer upon the books of the bank.

Error to Kent; Grove, J. Submitted November 13, 1896. Decided December 24, 1896.

Case by the Michigan Trust Company against the State Bank of Michigan to recover damages for defendant's failure to transfer upon its books a certificate of stock which had been assigned to plaintiff by the registered holder. From a judgment for defendant on verdict directed by the court, plaintiff brings error. Affirmed.

*Fletcher & Wanty*, for appellant.

*William J. Stuart* and *Butterfield & Keeney*, for appellee.

LONG, C. J.    The defendant began business in Grand Rapids in the summer of 1892, and on August 22d of that year issued to William T. Lamoreaux 10 shares of its capital stock, of the par value of $1,000.    In October following he opened an account with, and became indebted to, the defendant, continuing indebted to it up to the time of his death, November 10, 1895.    That indebtedness at all times exceeded the sum of $2,000, and was evidenced by his promissory notes.    At the time of his death he was indebted in large sums, both as maker and indorser of notes, and of this sum $5,000 was past due and unpaid.    He was also indebted to the bank to the amount of $6,000, which had not yet matured.    On January 29, 1895, he borrowed from the Michigan Trust Company $1,000, making an assignment to it of his certificate of stock in the defendant bank, and delivering it, and also making a collateral agreement, containing a power to sell said stock if the note given to secure the loan of $1,000, or any renewal, was not paid within 10 days after it became due.    The note of that date was renewed August 1st, payable 6 months after date, with 7 per cent. interest.    This last note, when it matured, was not paid, and, after waiting the time specified in the agreement, the plaintiff advertised the stock for sale according to the terms of the pledge, and sold the same to Henry D. Walbridge for $900.    The defendant, it appears, had no knowledge or notice that the Michigan Trust Company had or claimed any interest in the shares of stock, as pledgee or otherwise, until December 10, 1895.    This was a month after Lamoreaux's death.    In January and July of that year dividends upon these shares were paid to Mr, Lamoreaux by the defendant.    On December 9, 1895, the Michigan Trust Company gave notice to the

bank that it was the owner of the shares of stock. It was stated in that notice that the plaintiff held the stock as collateral to the note of Lamoreaux for $1,000, dated August 1, 1895, due six months after date, with interest at 7 per cent. per annum, and it was further stated: "It becomes apparent to us that we shall have to look to this stock for the payment of the note." On the next day the defendant bank wrote the plaintiff that its letter was received, and recited: "At the date on which said notice was received by this bank, the said W. T. Lamoreaux was a debtor to this bank, both as principal and as an indorser, on paper overdue." The defendant thereafter refused to recognize the rights of any person in this stock certificate by reason of such transfer, because Lamoreaux, at the time demand for transfer was made, was indebted to the defendant on an obligation that was due and unpaid, although it appears that such indebtedness was not due and unpaid at the time of the transfer of the stock to the Michigan Trust Company. This action was brought to recover the value of the stock certificate. On the trial the court directed verdict and judgment for the defendant.

The plaintiff contends that the transfer and delivery of the stock to it by Lamoreaux on January 29, 1895, created a lien prior to any lien which the defendant afterwards obtained under the statute, and relies upon the following provisions of 1 Howell's Annotated Statutes: Section 4866:

"Whenever the capital stock of any such corporation is divided into shares, and certificates thereof are issued, such shares may be transferred by indorsement and delivery of the certificates thereof, such indorsement being by the signature of the proprietor, or his attorney or legal representative; but such transfer shall not be valid, except between the parties thereto, until the same shall have been so entered on the books of the corporation as to show the names of the parties by and to whom transferred, the number and designation of the shares, and the date of the transfer."

Section 4901 provides:

"Any person holding stock in any such corporation may have the same transferred upon the books of such agency within this State, upon the same terms, conditions, and restrictions as is provided by law, or the rules of such corporation, for such transfer at the principal office of such corporation, wherever it may be situated."

It is contended that, under these provisions of the statute, the property in the shares of stock passed to the plaintiff, by the delivery of the certificate and proper indorsement thereon, without the formality of a transfer on the books of the defendant bank, and that the defendant had no right in this stock, because, at the time of the transfer to plaintiff, it had no lien upon the stock, there being no indebtedness to the bank by Lamoreaux which was matured and unpaid. On the other hand, it is contended by counsel for defendant that the transfer to the plaintiff was not effectual, except as between the parties thereto, and could not be made effectual, under the provisions of the statute, to transfer title, until such transfer was entered upon the books of the corporation, and that, at the time the defendant bank had notice of the transfer to the plaintiff, the indebtedness of Lamoreaux to the bank had matured and was unpaid, and it was not then bound to make the transfer upon the books of the bank, as its lien had then attached. Counsel cite 3 How. Stat. § 3208*a*8, as follows:

"The shares of stock of such bank shall be deemed personal property, and shall be transferred on the books of the bank in such manner as the by-laws thereof may direct; but no transfer of stock shall be valid against a bank so long as the registered holder thereof shall be liable as principal debtor, surety, or otherwise to the bank for any debt which shall be due and unpaid, nor in such case shall any dividend, interest, or profits be paid on such stock so long as such liabilities continue, but all such dividends, interest, or profits shall be retained by the bank, and applied to the discharge of such liabilities; and

no stock shall be transferred on the books of any bank without the consent of the board of directors, where the registered holder thereof is in debt to the bank for any matured and unpaid obligations."

It is unnecessary, in the present case, to determine what were the rights of the Michigan Trust Company at the time the certificate of stock was transferred to it in January, 1895. It is claimed that, had the plaintiff at that time demanded a transfer to it from the bank upon its books, the bank would have been obliged to make such transfer; but that question we do not determine. Instead of the demand being made by the plaintiff to have the transfer made upon the books of the bank before the indebtedness from Lamoreaux to the latter had matured, the plaintiff waited from January to the 9th of December following before making such demand. In the meantime the bank had from time to time given Lamoreaux credit, taking and renewing his promissory notes, when, on the 9th of December, a part at least, and enough to cover the amount of this certificate, had matured and remained unpaid. It is evident that, under these statutes, at that time, the bank was not compelled to make the transfer of this certificate upon its books. The bank was in a position at least to assert a lien upon the certificate whenever the indebtedness matured and remained unpaid. We think this statute can have no other interpretation. The statute in relation to the transfer (section 4866) contains the express provision that "the transfer shall not be valid, except between the parties thereto, until the same shall have been so entered on the books of the corporation." It is evident that this provision is intended exclusively for the benefit of the bank.

In *Reese* v. *Bank*, 14 Md. 271 (74 Am. Dec. 536), one of the debts owing to the pledgee arose September 27, 1854, which was prior to the time when the indebtedness to the bank arose and for which it claimed a lien accrued; but no notice thereof seems to have been given to the bank until demand for transfer on the books was made. The

assignee of the shares demanded the transfer of the bank, but refused to pay the debt owed the bank by the stockholder. The assignee afterwards made a second demand. It appeared that other notes of the stockholder had by that time become due and payable, and the bank refused to make the transfer until all the notes then due and payable were first paid and discharged. The statute provided:

" The shares of the capital stock of the corporation shall be transferable on the books of the corporation only, according to such rules as shall be established by the president and directors; but all debts actually due and payable to the corporation by a stockholder requesting a transfer must be satisfied before such a transfer shall be made, unless the president and directors shall direct to the contrary."

It was held that, under this statute, the assignee of the stock had no right to demand a transfer upon the books of the corporation until he had paid and discharged all the debts of the stockholder which had become due and payable at the time of the second demand.

In *Union Bank* v. *Laird*, 2 Wheat. 390, the same principle was stated. There the act of incorporation provided:

"The shares of the capital stock at any time owned by any individual stockholder shall be transferable only on the books of the bank, according to such rules as may, conformably to law, be established in that behalf by the president and directors; but all debts actually due and payable to the bank (days of grace for payment being passed) by a stockholder requesting a transfer must be satisfied before such transfer shall be made, unless the president and directors shall direct to the contrary."

The certificate was issued to one Patton on March 26, 1811. It was for 50 shares of stock; and on that day he delivered it to the defendant, Laird, to secure him against his indorsement, and on the 10th of July he executed to Laird a power of attorney authorizing him to make a transfer of his stock, and on August 22d he executed a deed of assignment to Laird of his stock. It appears that

he became indebted to the bank on July 17, 1811, and the bank, when requested by Laird to make the transfer, declined to do so. The court said:

"No person, therefore, can acquire a legal title to any shares, except under a regular transfer, according to the rules of the bank; and if any person takes an equitable assignment, it must be subject to the rights of the bank under the act of incorporation, of which he is bound to take notice. The president and directors of the bank expressly deny that they have waived, or ever intended to waive, the right of the bank to the lien, for debts due to the bank, by the form of the certificate, and that they ever directed any transfer to be made to Patton which should stipulate to the contrary. Under such circumstances, it must be held that the shares are responsible for the debts due to the bank."

This rule is supported in *National Bank* v. *Watsontown Bank*, 105 U. S. 217. We think this is the general rule, and is upheld by the great weight of authority, and that it is in conformity, also, with the English doctrine. All that we need to decide in the present case is that, the demand not having been made upon the defendant bank until the debt of Lamoreaux to the bank had matured and was unpaid, the defendant bank was in a position to refuse to transfer upon its books the certificate of stock which had theretofore been pledged to the plaintiff, as we think it was the intent of the statute under such circumstances to give the bank issuing the stock priority of lien.

The judgment of the court below must be affirmed.

GRANT, HOOKER, and MOORE, JJ., concurred. MONTGOMERY, J., did not sit.