OAKLAND COUNTY SAVINGS BANK *v.* STATE BANK OF CARSON CITY.

1. BANKS AND BANKING—TRANSFER OF STOCK—BONA FIDE PURCHASER—LIEN OF BANK.

A *bona fide* purchaser of bank stock is not protected against a lien of the bank for an indebtedness due from the transferrer.

2. SAME—ESTOPPEL—AUTHORITY OF CASHIER.

A bank cashier, by his declarations that the bank has no lien upon the stock of a shareholder, estops the bank, as against one who relies thereon to his detriment, from asserting a lien on the stock for an indebtedness then due it, notwithstanding that, under 3 How. Stat. § 3208a8, a transfer upon the books of the bank can be made only by the consent of the directors, when the holder is indebted to it on matured paper. HOOKER and GRANT, JJ., dissenting.

Appeal from Ionia; Davis, J. Submitted February 9, 1897. Decided May 28, 1897.

Bill by the Oakland County Savings Bank against the State Bank of Carson City to compel a transfer of stock upon the books of the defendant. From a decree dismissing the bill, complainant appeals. Reversed.

*Fedewa & Walbridge,* for complainant.

*Fitz Gerald & Barry* (*George H. Cagwin* and *Francis A. Stace,* of counsel), for defendant.

MONTGOMERY, J. Complainant, on the 23d of March, 1893, extended a credit to Samuel S. Walker, a stockholder in the defendant corporation, upon his promissory note of $3,000, and took as collateral three certificates, each representing $1,000 worth of stock in the defendant bank. Subsequently $1,000 of the principal was paid, and one of the certificates of stock surrendered. This bill is filed, after a refusal by the defendant bank to recognize the complainant's ownership in the stock, and to transfer the same upon the books of the bank, to compel such transfer.

After receiving the certificates, and on the next day, the complainant's cashier wrote to the cashier of the defendant, saying:

"We have taken 30 shares of stock of your bank, represented by certificates 83, 84, and 85, issued to Samuel S. Walker, as collateral security to a loan. Please advise us if you have any lien on said stock."

To which the defendant's cashier replied:

"Your favor of the 24th to hand, in relation to bank stock. In reply, would say I do not hold any lien on said stock.

"Yours truly,
"E. C. CUMMINGS, Cashier."

At the time of the transfer of the stock by Walker to the complainant, Mr. Walker stated to the cashier of complainant that he was not indebted to the defendant bank. It now appears that at the time this letter of Cummings was written to the cashier, and at the time of the loan, Walker was indebted to the defendant bank, and under the statute a lien existed in favor of the defendant bank upon the stock. At the time the loan was procured, Mr. Walker was financially responsible, and it is reasonably clear that, if the defendant's cashier had informed the complainant of the true situation, the complainant would have been able to secure its claim. Walker has since become insolvent.

Two contentions are made on behalf of complainant:

*First*, that complainant, in the first instance, as transferee of the stock, is entitled to priority over the defendant bank, as a *bona fide* purchaser of such stock; *second*, that, if this be not true, still the defendant has, by the letter of its cashier, estopped itself from asserting a lien upon the stock entitled to priority over complainant.

The first question is ruled against the complainant's contention by *Michigan Trust Co.* v. *State Bank of Michigan*, 111 Mich. 306, and *Citizens' State Bank of Monroeville* v. *Kalamazoo Co. Bank*, Id. 313. We think, however, that the defendant should be held estopped from asserting the priority of its lien upon this stock. The defendant's contention is that under section 3208*a*8, 3 How. Stat., a transfer of the stock upon the books of the bank can be made only by the consent of the directors, in a case where the owner of the stock is indebted to the bank on matured paper at the time of the attempted transfer, and that the assignee takes the stock subject to this right. From this it is contended that, as the transfer of the stock subject to such a lien can only be made with the consent of the board of directors, it necessarily follows that the bank can only estop itself through the action of the board of directors. We think this contention cannot be maintained. Undoubtedly, as to one *having knowledge* of the fact of an indebtedness owing by the owner of the stock to the bank, the cashier would be without authority to waive the bank's lien. But that is not this case. It is the common practice for cashiers to have control of the books of the bank, and to conduct its correspondence. It cannot be doubted that the purchaser of stock *not* incumbered by a lien in favor of the bank might have it transferred upon the bank's books without the consent of the board of directors; and the estoppel in this case arises out of the failure of the proper officer, who is custodian of the books of the bank and of its bills receivable, to truthfully answer a question relating to facts peculiarly within his knowledge.

The case of *Cochecho Nat. Bank* v. *Haskell*, 51 N. H.

116 (12 Am. Rep. 67), is instructive upon this question. Two questions were presented in that case: One ,was whether the cashier of the bank had power to discharge a debtor of the bank without payment, or to bind the bank by an agreement that a surety should not be called upon to pay a note he had signed, or that he should have no further trouble from it; and, *second*, whether the bank could be estopped by his declaration that the note was paid. It was held, as to the first question, that it could not be inferred that the power to discharge an obligation due to the bank without payment, or to make such an agreement with a surety as that suggested, was within the scope of the cashier's authority; but the court say:

"It would be otherwise, we think, as to his declaration that the note was paid. It is his duty to receive payment, and to keep the account of it, and he is the proper person to apply to, to ascertain whether a note has been paid or not. It would, indeed, be peculiarly within the scope of the business confided to him, to give such information."

So here the complainant addressed the custodian of the books and of the bills receivable of the bank for information, and, when the cashier spoke in response to this request for information, the bank spoke, and should be held estopped from now asserting the facts to be otherwise than as stated to complainant in response to its inquiry. See, also, *Merchants' Bank* v. *State Bank*, 10 Wall. 604. To assert that the law says that the cashier may not permit the transfer of stock of the bank while the lien exists upon it, that it follows from this that he cannot deprive the bank of a lien, and that, therefore, every one is bound to know that, if the bank is to be estopped by any one, it is the directors, is to describe in sections the circumference of the same circle. The question is not what steps should be taken by the purchaser of stock with knowledge that it is subject to a lien in favor of the bank, but the question is what are proper steps to be taken to ascertain *whether such a lien exists*. If one may not do this by correspondence with the bank, or with the officer of the bank uni-

versally recognized as representing the bank in its correspondence, there would seem to be an end to legitimate transactions in stock of corporations. The fault in this assertion lies in a failure to recognize that, preliminary to the question of whether there shall be a transfer, preliminary to the purchase of the stock, common prudence suggests that the purchaser may inquire in the usual channels for the purpose of ascertaining whether the stock is subject to a lien. If such an inquiry be directed to the party who conducts the correspondence of the bank, it is bare assertion to say that, because he has not the power under the law to compel the board to consent to the transfer of the stock, he cannot, through a simple lie, estop the bank. The point is that in the correspondence upon the subject the bank speaks, through the cashier. It is the bank that speaks, itself, by an assertion which *it* makes by a perfectly proper and competent agency in that behalf.

The decree should be reversed, and a decree entered in this court for complainant.

LONG, C. J., and MOORE, J., concurred with MONTGOMERY, J.

HOOKER, J. (*dissenting*). S. S. Walker, a stockholder in the defendant, which is a corporation organized under the State banking law, assigned 30 shares of his stock to secure a note that he gave to the complainant. Subsequently the complainant asked that said stock be transferred to itself upon the books of the defendant, and, being refused, filed the bill in this case to compel it. It appears that, at the time the stock was assigned, Walker was indebted to the defendant upon paper then due, and has so continued since, and defendant asserts a lien upon the stock under the statute.

The recent cases of *Michigan Trust Co.* v. *State Bank of Michigan*, 111 Mich. 306, and *Citizens' State Bank of Monroeville* v. *Kalamazoo Co. Bank*, Id. 313, support defendant's contention. It is said, however, that the defendant should be estopped by the conduct of its cashier

from setting up a claim against the complainant. This is based upon correspondence between the cashiers of the two banks, whereby it is said to have become the duty of defendant's cashier to inform the complainant of Walker's indebtedness, which he did not do. Section 3208*a*8 of 3 Howell's Annotated Statutes justifies a bank in refusing to transfer stock during the time that the owner is indebted to the bank upon matured paper, and assignees of the stock take it subject to this right. Furthermore, the act expressly prohibits the transfer of such stock upon the books at such a time *without the consent of the board of directors.* It is said that the cashier is the officer of whom a person proposing to buy stock would naturally inquire to ascertain whether or not the bank had a lien upon it, and that the purchaser would have a right to rely upon his statements, and that the bank could not afterwards question them by reason of an estoppel. The statute apparently attempts to secure the bank and its depositors against loss through its shareholders by providing a lien upon the stock for sums due to the bank from its stockholders. It makes a transfer by a registered stockholder, at a time when he owes an overdue claim, invalid as against the bank, and prohibits a change in the registered ownership except by the consent of the board of directors. If any one can estop the bank, it is the board, not the cashier, whom the law deprives of all power to transfer the stock without consent of the directors, where the effect of the transfer is to cut off a lien. No one would pretend that a statement by a janitor could estop the bank. Could the messenger, collector, bookkeeper, teller, assistant cashier, vice president, or one of the directors, in such a case? It may be said that they are on a different footing, because they are not the officers who represent the bank in its ordinary business transactions, while a cashier is. It is doubtless a common practice to treat cashiers as the business managers of banks, but the law imposes no such

113 MICH.—19.

duties upon them, nor does it confide any specific power of this character to them. On the contrary, it expressly prohibits it. The statute (section 3208a3) provides that the board of directors shall define his duties, as is the case in the national banking law. And it is not uncommon to find presidents or vice presidents in charge of banks. But, if it be admitted that the cashier has general charge, there is one thing that the law says he cannot do, and that is to deprive the bank of a lien. Every one is bound to know that, and that, if the bank is to be estopped by any one, it is by the directors. To say that the bank may be estopped in such a case as this is to say that, although a bank cashier is expressly deprived of authority to do an act, he has the power to bind the bank if he does the act. Where the act constituting the estoppel is one which the bank has the power to confer upon the officer, but has not expressly done so, a practice by the officer of performing similar acts in the course of the business, to the knowledge of the bank, may create an estoppel. The case of *Cochecho Nat. Bank* v. *Haskell*, 51 N. H. 116 (12 Am. Rep. 67), was such a case; the opinion expressly stating that—

"He [the cashier] may, however, have been specially empowered to do the act, or he may have been allowed by the directors to take the general charge and management of the business of the bank, so as to bring such agreement or statement within the scope of his agency."

This case has gone to the extreme limit in sustaining an estoppel, but not nearly so far as it is necessary to go in this case to sustain the complainant's claim. See the case of *Merchants' Bank* v. *State Bank*, 10 Wall. 604. In that case it would seem that the bank might have given the cashier the power, and, if it had not, the court seem to have inferred it from the extensive authority which the bank permitted the cashier to exercise. But it does not go so far as to suggest that an act prohibited by law might become the basis of an estoppel. A strong dissenting opinion was filed in this case.

In the case before us it is admitted that the cashier had not the power to transfer the stock, or to compel the board to consent to it, but it is claimed that through a simple lie he may accomplish this. The law seems to exclude the claim that the cashier had legal power to give such consent, if words are adequate to do so; and, if he could not bind the bank by an express agreement to waive its claim, he was certainly not able to do this by silence. Counsel for the defendant cite numerous authorities to the proposition that the power to release the security of banks is not vested in cashiers, on general principles; but, as the statute clearly prohibits it, we need not consider the question.

The decree should be affirmed.

GRANT, J., concurred with HOOKER, J.