E. O. FAULKNER V. THE BANK OF TOPEKA.

No. 15,783.   (94 Pac. 153.)

SYLLABUS BY THE COURT.

BANKS AND BANKING—*Transfer of Stock on Books—Lien—Indebtedness of Registered Holder.* Section 52 of chapter 47 of the Laws of 1897 (Gen. Stat. 1901, § 458) forbids a transfer of shares of bank stock on the books of the bank without the consent of the board of directors when the registered holder is indebted to the bank upon obligations matured and unpaid; and a transfer under such circumstances may be refused by the bank notwithstanding the fact that the party demanding the transfer acquired the shares from the registered holder at a time when the registered holder was not indebted to the bank.

Original proceeding in mandamus.   Opinion filed February 8, 1908.   Writ denied.

*Eugene F. Ware, Ralph Nelson,* and *E. H. Ware,* for plaintiff.

*D. R. Hite,* and *Mulvane & Gault,* for defendant.

The opinion of the court was delivered by

BURCH, J.: E. O. Faulkner brings this original proceeding in mandamus to compel the Bank of Topeka to transfer to him on its books certain shares of its capital stock. The bank refuses to make the transfer because it claims a lien on the stock. The stock was owned formerly by C. J. Devlin, to whom was issued a certificate therefor in the following form:

"No. 449.     Shares $100 each.     No. Shares 25.
This is to certify that Chas. J. Devlin is entitled to twenty-five (25) shares of $100 each in the capital stock of the Bank of Topeka, Kansas, transferable at the bank only by himself or his attorney on the surrender of this certificate.

In witness whereof the seal of said bank is hereunto affixed at Topeka this May 4, 1899.
                              J. R. MULVANE, *President.*
[SEAL.]                       J. W. THURSTON, *Cashier.*"

25—77 KAN.

Devlin assigned and delivered the certificate to the plaintiff as collateral security. Afterward Devlin became indebted to the bank in an amount equal to or greater than the present value of the stock. After this indebtedness had matured, and while it remained unpaid, the plaintiff demanded a transfer of the stock, which demand was refused for the reason stated.

The claim of the defendant is based upon the provisions of section 52 of chapter 47, Laws of 1897 (Gen. Stat. 1901, § 458), which reads as follows:

"The shares of stock of an incorporated bank shall be deemed personal property, and shall be transferred on the books of the bank in such manner as the by-laws thereof may direct; but no transfer of stock shall be valid against a bank so long as the registered holder thereof shall be liable as principal debtor, surety or otherwise to the bank for any debt which shall be due and unpaid, nor in such case shall any dividend, interest or profit be paid on such stock so long as such liabilities continue, but all such dividends, interests or profit shall be retained by the bank and applied to the discharge of such liabilities; and no stock shall be transferred on the books of any bank without the consent of the board of directors, where the registered holder thereof is in debt to the bank for any matured and unpaid obligation; and no transfer of stock shall be made when the bank is in a failing condition, or when its capital is impaired. All transfers of stock shall be certified to the bank commissioner immediately."

The decision of the controversy depends upon the interpretation to be given to this statute. In brief the claim of the plaintiff is that the statute does not apply to this transaction; that he became an innocent pledgee of the stock and vested with the legal and equitable title to it when Devlin was not indebted to the bank; that he then had a right to the transfer of the stock on the bank's books; that the maturity and non-payment of subsequent loans made by the bank to Devlin could not affect this right; that Devlin ceased to be a "registered holder" when he pledged the stock to the plaintiff; and that an enforcement of the lien would virtu-

ally accomplish a loan by the bank on the security of the stock, which is contrary to law.

A bank must at all times have a register of its stockholders. It must know who is entitled to vote its stock, who is entitled to receive dividends, who may be called upon for assessments, and, generally, who should bear the burdens and receive the benefits of stock ownership. Besides this, persons dealing with a bank have a direct interest in its personnel, and recurring events illustrate the fact that the state as a conservator of the public welfare has a legitimate concern in the matter. Therefore the law provides that when a bank is organized the president or cashier shall transmit to the bank commissioner of the state a verified statement showing the names and residences of its stockholders and the amount subscribed and paid in by each one. (Laws 1897, ch. 47, § 5; Gen. Stat. 1901, § 411.) After a bank has been organized and has been authorized to do business the same certainty and publicity are required. (Laws 1897, ch. 47, § 47; Gen. Stat. 1901, § 453.) True, shares of stock are personal property, and as such are transferable; but upon a change of ownership the transfer must be made on the books of the bank, and must be certified immediately to the bank commissioner. The provision of section 52, quoted above, is that shares of stock "shall be transferred on the books of the bank." Under the well-known canons of construction this means that nothing short of a transfer on the books of the bank will be sufficient. The only kind of transfer which can avail, to affect the rights of the bank, its creditors and the public, is a transfer on the books of the bank. None other need be recognized.

From the provisions for a double record of the ownership and transfer of stock, one in the bank and one in the office of the bank commissioner, it is plain who is indicated by the words "registered holder." He is the person shown by the books of the bank to be the holder of stock. It is also plain that there must in all

cases be a registered holder for every share of bank stock, and if a registered holder dispose of his stock he will continue to be the registered holder until the transfer is made on the books of the bank. An assignee of a registered holder who has not caused the transfer to be made on the books of the bank may be entitled to the rights of a registered holder as against his assignor, but the bank itself and creditors of the bank, ignorant of the assignment, may rely upon the record.

On account of the relations of a bank to the business world, and the peculiar economic functions which it performs, it becomes necessary under certain circumstances to subordinate the rights of a stockholder to others which are paramount. Therefore the law provides that the double liability of the stockholder cannot be shifted by a transfer made when the bank is in a failing condition or when its capital is impaired. The funds which a bank loans are always largely the funds of depositors, and to protect them and other creditors a stockholder who is indebted to the bank upon a matured obligation is permitted to receive no interest, dividend or profit on his stock while default in payment continues, but all the earnings of his stock must be applied to the discharge of his liability to the bank; and to prevent an impairment of the bank's assets, and to indemnify those most entitled to security against a depletion of its resources, it is further provided that no transfer of stock shall be valid against the bank so long as the registered holder remains liable to it upon any matured and unpaid claim, and no transfer of stock shall be made upon the books of the bank without the consent of the board of directors when the registered holder is related to it as a debtor in default.

The foregoing analysis of the law and statement of some, and only some, of the obvious reasons upon which it is founded disclose that it is clearly applicable to the facts of the present controversy. Devlin was

the registered holder of the shares when the certificate was presented for transfer. It is merely paltering with terms to say otherwise. The bank knew nothing of the plaintiff or his rights until that time. When the certificate was presented for a transfer of the shares on the books the registered holder was indebted to the bank upon matured and unpaid obligations. At that time the transfer to the plaintiff was invalid as against the bank, and it would have been a violation of the law to have made a transfer on the books without the consent of the board of directors. When the plaintiff became possessed of the stock he did not take the steps necessary to complete his title. The title he acquired was good only against Devlin. It was not the full legal title. It was subject to the springing into existence of a lien against it in favor of the bank consequent upon the conduct of the registered holder. To prevent a lien in favor of the bank from accruing the plaintiff should have made himself the registered holder. He was not innocent in the matter. He was charged with knowledge of the law, and the very terms of his certificate apprised him of the conditions upon which alone he could become a transferee as against the bank. Having negligently waited until circumstances had arisen under which the bank became entitled to statutory privileges granted for reasons of public policy, he must abide the consequences.

The argument that recognition of the bank's lien contravenes the provisions of the statute forbidding loans by a bank on the security of its own stock has been met in the case of *Battey v. Bank,* 62 Kan. 384, 63 Pac. 437, the syllabus of which reads:

"While the officers of a state bank are prohibited from making loans or discounts to a stockholder on the security of stock in the bank, and while the bank cannot thereafter become the purchaser or holder of loans on such stock, unless it shall become necessary to prevent loss on a debt previously contracted in good faith, yet, if a stockholder has become liable to the bank as principal, surety, or otherwise, on debts not

incurred on such security, it will be entitled to a lien on his stock for such debts as are due and unpaid, and while such liability continues."

Allowing for differences in statutes and states of fact the foregoing views are supported by the reasoning of the following, among other, decided cases: *The Union Bank v. Laird,* 15 U. S. *390, 4 L. Ed. 269; *Reese & Fisher v. The Bank of Commerce,* 14 Md. 271, 74 Am. Dec. 536; *Brent v. The Bank of Washington,* 35 U. S. 596, 9 L. Ed. 547; *National Bank v. Watsontown,* 105 U. S. 217, 221, 26 L. Ed. 1039; *Michigan Trust Co. v. State Bank,* 111 Mich. 306, 69 N. W. 645; *Citizens Bank v. Kalamazoo Co. Bank,* 111 Mich. 313, 69 N. W. 663; *Oakland Co. Savings Bank v. State Bank,* 113 Mich. 284, 71 N. W. 453, 67 Am. St. Rep. 463; *Peoples Bank v. Exchange Bank,* 116 Ga. 820, 43 S. E. 269, 94 Am. St. Rep. 144; *Hammond v. Hastings,* 134 U. S. 401, 10 Sup. Ct. 727, 33 L. Ed. 960; *Curtice v. Crawford County Bank,* 110 Fed. 830.

Upon the face of the proceeding this appears to be a friendly suit (in perfectly good faith, however,) to obtain an interpretation of the statute in question. The defendant does not make the point that mandamus is not the proper remedy. Since in any event the writ must be denied the question may be left open.

The peremptory writ is denied.