NATIONAL CITY BANK OF CHICAGO v. KALAMAZOO CITY SAV. BANK.

(Circuit Court of Appeals, Sixth Circuit. May 2, 1916.)

No. 2721.

BANKS AND BANKING ☞42—LIEN OF BANK ON STOCK—PRIORITY AS BETWEEN BANK AND PLEDGOR—MICHIGAN STATUTE.

Comp. Laws Mich. 1897, § 6098, relating to banks, provides that "no transfer of stock shall be valid against a bank so long as the registered holder thereof shall be liable as principal debtor, surety or otherwise to the bank for any debt which shall be due and unpaid, * * * and no stock shall be transferred on the books of any bank, * * * where the registered holder thereof is indebted to the bank for any matured and unpaid obligations." *Held* that, under such provisions, as construed by the Supreme Court of the state, a pledgee of stock at a time when the registered owner does not owe the bank a debt which is then due acquires an inchoate or contingent priority over any existing, but unmatured, bank debt, which he may make a fixed priority by demanding a transfer on the books before such debt matures; but in the absence of such demand, or of a notice which means that he has elected to make it, or of facts which make that election unnecessary, on the maturity of any debt from the pledgor to the bank, its statutory lien takes precedence.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 50, 56–60; Dec. Dig. ☞42.]

Appeal from the District Court of the United States for the Western District of Michigan; Clarence W. Sessions, Judge.

Suit in equity by the Kalamazoo City Savings Bank against the National City Bank of Chicago. Decree for complainant, and defendant appeals. Affirmed.

The Michigan Buggy Company, a corporation, suspended payment August 1, 1913. It had been doing business with the Kalamazoo City Savings Bank,

a corporation under the Michigan banking law, and Palmer, one of the Buggy Company's officers, had guaranteed the bank against loss on the company matters. Palmer had been continuously a stockholder in the bank. On September 25, 1911, he borrowed $10,000 from the National City Bank of Chicago, and as collateral security therefor assigned and delivered to the Chicago bank 50 shares of his stock in the Kalamazoo bank. Thereafter he made payments on this loan and parts of the collateral were released until, in July, 1913, there remained $4,000 unpaid, and 20 shares of stock were still retained and held by the Chicago bank as collateral.

On July 26th the Buggy Company drew a draft for about $10,000 upon a Pennsylvania customer, and the Kalamazoo bank discounted this draft and credited the proceeds to the Buggy Company. It resulted that the Buggy Company had a credit balance in its account at the bank thereafter and until August 2d, on which day the draft was returned because acceptance was refused and it was charged back to the Buggy Company, creating a debit balance of about $7,000, which thereafter remained unpaid.

Section 6098, C. L. Mich. 1897, being part of the law governing state banks, provides: "The shares of stock of such bank shall be deemed personal property, and shall be transferred on the books of the bank in such manner as the by-laws thereof may direct, but no transfer of stock shall be valid against a bank so long as the registered holder thereof shall be liable as principal debtor, surety or otherwise to the bank for any debt which shall be due and unpaid, * * * and no stock shall be transferred on the books of any bank without the consent of the board of directors, where the registered holder thereof is indebted to the bank for any matured and unpaid obligations."

A controversy arose about their respective rights between the Chicago bank, as pledgee of the 20 shares of Palmer's stock, and the Kalamazoo bank, claiming a lien upon the same stock under this statute, on account of Palmer's guaranty of the Buggy Company's debt. Upon a bill filed in the court below by the Kalamazoo bank, that court held that its rights were superior, and that the Chicago bank must yield thereto its claims as pledgee. The Chicago bank brings this appeal.

M. M. Uhl, of Grand Rapids, Mich., for appellant.
Dallas Boudeman, of Kalamazoo, Mich., for appellee.

Before WARRINGTON and DENISON, Circuit Judges, and KILLITS, District Judge.

DENISON, Circuit Judge (after stating the facts as above). This statute has been accepted, by the Supreme Court of Michigan, as providing that the pledgee or purchaser of bank stock, who presents the certificates to the bank for transfer on its books, has an absolute right to such transfer as against any claim by the bank against its stockholder, unless such claim is upon a debt which is "due" in the sense of being past due; in other words, "due" and "matured," in different parts of the section, are synonymous. That court has also considered the respective rights of the bank and the pledgee in the cases later mentioned, and so far as it has thus construed the statute, it is, of course, our duty to follow; but some study of the principles involved in this situation, and in these Michigan cases, seems necessary before making their application to the facts in this case. We shall, for convenience, speak of the issuing corporation as the bank, and of the person loaning money upon the stock and taking it as collateral security as the pledgee.

It will be noticed that the statute contains two possibly effective provisions: The first is, "no transfer of stock shall be valid against the bank so long as," etc.; the second is, "no stock shall be transferred on

the books of any bank * * * where," etc. The first seems to relate to a transfer, in the broadest sense of that word, and the second to the entry of that transfer on the books so as to perfect the legal title. Considering the first provision by itself, it seems clear enough that not only the statutory provision but the converse must be accepted, and, accordingly, that a "transfer" is valid if the stockholder is not then liable to the bank upon a matured obligation; and so it would seem that the rights of the parties are to be judged as of the date when the pledgee acquires his interest. If this language alone were considered, it could hardly be material whether the interest, taken by a pledgee and assignee of certificates before transfer on the books, should be called legal or equitable; under either name, it is a substantial interest. This section does not purport to create or declare any lien in favor of the bank until the maturity of the debt, and it seemingly must follow that the pledgee's interest will be superior to any subsequently accruing statutory right in favor of the bank. However, the second statutory provision relates to the time when the pledgee demands a transfer on the books, and makes the right to such transfer conditional upon the nonexistence at that time of a debt to the bank which is then past due.

If the pledgee has acquired, by such original transfer, an interest good and valid against the bank, there is no equitable reason why this interest should be ousted by the subsequent maturity of the bank debt; yet the second statutory provision implies such ouster. There seems no way to reconcile the two provisions and give effect to each, unless it is upon the theory that the pledgee who takes the stock gets an inchoate or contingent priority over any existing and unmatured bank debt, which priority, as against the statute which still continues to threaten, the pledgee can fix and ripen only by demanding a transfer or doing some equivalent thing before the fatal incident—the maturity of the bank debt—happens. The pledgee is in the position of a mortgagee who has not recorded his mortgage, and is likely to lose his lien by the levy of execution by a creditor; this statute provides for an automatic execution; the lien, comparable to an execution lien, is precipitated by the mere coming of maturity.

It is to be noticed, also, that under this statute the usual equitable principles which fix priorities between conflicting claimants are wholly disregarded and an arbitrary rule is substituted. It seems plain that the statute does not intend to affect the stockholder's full control of his stock, so long as he is not in default at the bank, and that, though the pledgee or purchaser of stock may know that the stockholder is indebted to the bank for more than the value of the stock and that the debt will come due tomorrow, yet to-day he can acquire the stock by pledge or by purchase, present it for transfer on the books, and— lacking fraud—acquire a superior title. All the notices which the bank might serve would be waste paper. On the other hand, if the bank debt has matured before a demand for transfer or equivalent event happens, the right of the bank becomes superior by arbitrary provision, not by any equitable principle. The maturity of the debt does not prejudice the bank—rather the contrary; the bank does not do any-

thing or part with anything at maturity whereby it ought to be preferred over an outstanding superior equity. The date of the original loan by the bank, which is the only date as of which it can have equities against other claimants, is, in the statute, left out of account. These considerations confirm the conclusion that the statutory lien, when perfected by the happening of the statutory event, ought to prevail against the outstanding nonstatutory lien, which has not been perfected in the method provided.

It is obvious, we think, that the pledgee's demand for transfer, in order to satisfy this theory, need not be a present demand; an anticipatory one, or even a contingent one, may be equivalent. The important thing is the election by the pledgee to insist upon his right of priority, or his willingness to waive such right. The existence of the pledge does not necessarily imply that the pledgee will enforce his rights to the extent of injuring the bank. The stockholder may be amply responsible for the pledgee's loan, the pledgee may have other sufficient security, special and personal considerations would often control, the chance that a debt to the bank will mature and remain unpaid before the pledgee's debt matures may seem very small—in many cases, the pledgee would deliberately elect not to make claim, as against the bank, even at some risk to the pledgee. It follows that mere knowledge by the bank of the pledgee's loan is not equivalent to notice or knowledge that the pledgee will insist upon his priority. This, again, confirms the conclusion that the statute ought to be construed to give the priority to the bank upon maturity, unless, before that time, the pledgee has elected to demand his priority and the bank has knowledge of such election.

Are the Michigan decisions consistent with this conclusion? In Michigan Trust Company v. State Bank, 111 Mich. 306, 69 N. W. 645, it does not appear whether the bank or the pledgee first gave credit, but not until after the maturity of the bank debt did the pledgee give notice to the bank that the pledgee held the stock as collateral and intended looking to it for payment of the note. The lien or claim of the bank was held valid as against the pledgee; and the formal notice from the pledgee is treated as being the demand, or equivalent to the demand, for transfer to which the statute refers. In Citizens' Bank v. Kalamazoo Bank, 111 Mich. 313, 69 N. W. 663, the same situation existed, and the same result was reached. In Oakland Bank v. State Bank, 113 Mich. 284, 71 N. W. 453, 67 Am. St. Rep. 463, it is taken as clear without discussion that the lien of the bank was superior, where it was for a debt which was due before the pledgee acquired his interest. In Brinen v. Muskegon Bank, 174 Mich. 414, 140 N. W. 529, the only question in dispute was whether the debt to the bank was in fact matured when the pledgee demanded the transfer; and it was conceded that the pledgee was without remedy if the bank debt had, at that time, matured.

With one exception, these are all the Michigan decisions found, and they do not suggest that anything less than a demand for transfer, or a clear notice that transfer will be demanded, if necessary, given to the bank before its debt matures, will serve to prevent the otherwise

ensuing statutory reversal of the then existing superiority of right. The exception is Just v. State Bank, 132 Mich. 600, 94 N. W. 200. This case is urged upon us as holding that if the bank, before its debt matures, has knowledge in any manner of the outstanding pledge, the statute does not take normal effect, but the right of the bank remains, after maturity as before, inferior to the pledgee's right. In the Just Case, the facts were, as finally worked out by the court, that on December 2, 1897, a stockholder was indebted to the bank on a note which did not become due until July, 1898. On the former day the stockholder borrowed from the pledgee $2,000, assigning a stock certificate as collateral. The pledgee never made any formal demand for transfer, or served written or other formal notice of its election to insist upon having the stock; but before July, 1898, the bank had full knowledge from different sources of the existence of the pledge. The pledgor was dead, his estate was insolvent, and the bank knew that the pledgee was claiming the rightful title to the stock, and that either the bank or the pledgee must suffer loss. Under these circumstances, it was held that the bank, before its debt became due, had "notice" of the pledge, and that, therefore, the pledgee must prevail.

Here, for the first time, we have mentioned the subject of notice to the bank, as distinguished from a demand for transfer on the books. There is nothing in the statute about notice. We must query what is meant by "notice," and why it is necessary or what is its effect. Is "notice" synonymous with "knowledge"? Obviously, a notice may have either one of two functions (or both): It may be intended to give knowledge, and so affect the action to be taken by the person who is thus informed; or it may be intended to assert a demand or evidence an election. If this statute gave to the issuing bank a lien arising when it gave credit to its stockholder, then notice (at that time) in its first above-mentioned function—to give knowledge—would be important; but the statute does not declare any lien then arising. The statutory lien is postponed until the maturity of the debt.

In the Just Case, it is clear that notice merely for the sake of giving knowledge was of no possible importance. The loan by the bank had been made before the pledgee acquired its interest. A complete knowledge of the transaction with the pledgee, acquired on the next day by the bank, could not affect its future action, either to its help or to its prejudice. Its own lien would accrue by statute on the date of maturity, as it did, and no reason is suggested why the existence of knowledge by the bank of the collateral transfer to the pledgee should make any difference in the taking effect of this statute. The bank could not change its rights, either by acting or by not acting, as the result of its knowledge. If we take "notice" as being equivalent to "knowledge," this case would seem to create an exception to the statute, which mentions only demand for transfer, and could include only such notice as was tantamount to a demand; if, however, "notice" in this latter sense is intended, the facts of the case justify the use of the word, because there can be no doubt that the bank knew the pledgee would insist upon a transfer just as well as if it had been so told by the most formal notice.

232 F.—43

The Just Case cites a number of decisions as establishing the proposition that the weight of authority in this country pronounces the right of the bank inferior, if it had notice of the pledgee's claim. An examination of these decisions and authorities discloses that, so far as they involve mere knowledge, as distinguished from formal demand or election, they consider statutes which, by their language or by construction, involve the ordinary equitable principles of priority rather than any arbitrary rule. From no one of them is the inference to be drawn that under a statute where the pledgee acquires ultimate priority, although, when he made the loan, he knew of the existing debt to the bank, can he displace the statutorially ensuing priority of the bank merely because the latter had knowledge of the pledgee's loan when the bank debt matured. This is persuasive that the Supreme Court of Michigan did not intend to make its decision regarding "notice" cover mere knowledge in a case where no election by the pledgee to stand upon its pledge had ever been made or could be presumed. We therefore conclude that the Just Case does not require us to depart from the construction of the statute which would otherwise seem imperative—viz., that the bank is not required to transfer the stock on the books unless, before the maturity of the bank debt, the pledgee has demanded a transfer or has given a notice, which means that he has elected to claim his full rights, or unless the facts make that election so certain that formal notice is unnecessary. All practical considerations of fair dealing—and presumptively the Legislature intended to promote fair dealing—lead to the same conclusion. If the pledgee wishes to exercise his power to stop the running of this statute, he has only to record his mortgage—that is, to serve a formal demand or notice; if, for any reason, he is unwilling to do this, he should not have the same benefit through outside or accidental knowledge of the pledge coming to the bank. He should not take benefit from the fact that the bank in some way gets knowledge of the pledge, when, perhaps, he intended even not to allow the bank to learn of it. He should not be entitled to say that notice of some facts puts the bank on inquiry, and it is bound to follow the inquiry and ascertain the existence of the pledge, and thereby lose the lien it otherwise would get, although this notice and the final knowledge that the pledge exists could not affect in the slightest the bank's subsequent conduct.

This conclusion disposes of one "notice" which is claimed to have been given to the Kalamazoo bank by the Chicago bank. It was by way of a casual conversation between the representatives of the two banks on July 30th, and was a mere statement that the Chicago bank had some of Palmer's stock. There was no mention of the amount of stock or the amount of the loan; Palmer was not then thought to be even of doubtful responsibility, so far as appears; the talk fell far short of any definite notice of election to claim the stock, and the circumstances did not make that notice unnecessary; and there was such a lack of assertion of right by the Chicago bank that the Kalamazoo bank did not even see occasion to assert its own right. We cannot think that, by this statement, the pledgee could avoid the effect of the statute.

The other claimed notice may present a different question. It con-

sists of some knowledge received by the Kalamazoo bank before the discounting of the Pennsylvania draft which is the basis of the Kalamazoo bank's present claim. In spite of the silence of the statute, it may be thought that the bank should not be allowed to assert its statutory right against the pledgee, if, when it made the loan to its stockholder, it knew of the pledge then outstanding. It is not necessary to decide this question. See Hotchkiss v. Bank (C. C. A. 6) 68 Fed. 76, 15 C. C. A. 264, involving this question under a Connecticut statute. If mere knowledge may have that effect, it must at least be reasonably definite and certain, and the facts must raise the presumption that the knowledge was or should have been in the minds of the bank officers when the loan was made. We see no reason for applying to such a situation the strictness of the rules, regarding notice and putting on inquiry, enforced against one who is trying to displace an existing legal right because he is a good faith legal purchaser. Here the burden is the other way. The legal right—the statutory lien—is in the bank, and the pledgee is trying, upon equitable grounds, to displace it. The pledgee should, at least, make clear that the bank acted in bad faith. The statement by Palmer to the Kalamazoo bank, that some of his certificates were held by the Chicago bank, was made in May, 1912. Palmer then owned 65 shares. In the interval, before July, 1913, his Chicago indebtedness had been renewed and shifted several times. He had taken down most of the certificates there held; he had dealt with and sold a considerable number of certificates, which had been transferred on the books; and upon the reissue of the bank's capital, he had produced and surrendered the very certificates in exchange for which those now in dispute were issued, as if they were his own. These things are ample to neutralize the effect of such notice as the Kalamazoo bank had more than a year before, and such a situation does not justify a holding that the statute does not operate according to its terms.

The decree is affirmed.