BRINEN *v.* MUSKEGON SAVINGS BANK.

BILLS AND NOTES — DEMAND NOTE — LIEN OF CORPORATION FOR DEBT OF STOCKHOLDER—BANKS AND BANKING.

A negotiable instrument reading "On demand after date I promise to pay to the order of," etc., was a demand note which was not affected as to the time of maturity by a clause reciting that the maker had deposited certain collateral security with the payee bank and authorized it to sell at maturity or before the maturity of the note if the securities should depreciate; defendant bank, in which the maker was a stockholder, continued to have a lien on his bank stock for the indebtedness as against the claim of a pledgee of such stock to whom possession of the certificate was transferred before any demand was made upon the note.

Appeal from Muskegon; Sullivan, J. Submitted January 31, 1913. (Docket No. 59.) Decided March 20, 1913.

Bill by William Brinen against the Muskegon Savings Bank for an adjudication of complainant's and defendant's conflicting claims or liens on certain stock. From a decree for defendant, complainant appeals. Affirmed.

*Cross, Vanderwerp, Foote & Ross,* for complainant.
*William Carpenter,* for defendant.

MOORE, J. In this case the question is: Who of the parties has the superior right in ten shares of the capital stock of defendant company? Complainant asserts that he is the owner; while defendant contends it has a lien upon the stock which is superior to and takes precedence over the right claimed by complainant.

Defendant is a banking corporation. On December 31, 1910, Frank G. Jones, the then owner of ten shares of its capital stock, became indebted to defendant, which debt was evidenced by the following writing:

"MUSKEGON, MICHIGAN, Dec. 31, 1910.

" On demand after date I promise to pay to the order of Muskegon Savings Bank, at its banking office in Muskegon, Mich., five thousand dollars, $5,000.00, for value received, with interest at the rate of six per cent. per annum after date, and I herewith deposit with said bank as collateral security for the payment of this note, or of any other indebtedness by me to said bank, one hundred shares of American Electric Fuse Company as evidenced by certificate number 17, and I hereby give to said bank or its assigns full authority and power to sell, transfer and convey the said collateral security, or any part thereof, on the maturity of this note or any time thereafter, or before maturity of this note, in the event of said securities depreciating in value, at public or private sale, at its discretion, without advertising the same, or giving me any notice, with the right of said bank or its assigns themselves to be the purchasers, and to apply the proceeds of such sale or sales, first, to the payment of the expense of such sale or sales, and the balance to the payment of this note including interest thereon; and in case the proceeds of the sale of the said collateral security shall not cover the said expense of sale, and principal and interest of this note, I promise to pay the deficiency forthwith after such sale.

[Signed]    "FRANK G. JONES.
" No. 115.    Due—Demand."

Payment of this note at maturity, or on demand at any time thereafter, was guaranteed by the American Electric Fuse Company upon the back of the instrument. No demand for payment of this obligation was made until the afternoon of June 10, 1911.

On the 8th of June, 1911, Mr. Jones, then the owner of the stock, indorsed it in blank and delivered it to the Union National Bank of Muskegon as collateral security for a loan of $1,250. This debt became due July 8, 1911, and on December 5, 1911, in pursuance of a proper notice, the stock was sold to complainant for the consideration of $1,250.

On December 13, 1911, complainant presented to defendant this certificate indorsed in blank by Mr. Jones, with evidence of sale to complainant, and demanded that a new certificate be issued to him, offering to surrender to

defendant the old certificate No. 288 for that purpose. Defendant refused to comply with this demand, claiming that Mr. Jones was indebted to it in the sum of $5,000 on account of the note given December 31, 1910, and that said note had matured on June 10, 1911, by reason of demand of payment that day made upon Jones, and further claiming that at the time of the making of such demand of payment defendant had no knowledge or information that Mr. Jones had pledged the stock to the Union National Bank.

The court below rendered a decree that the defendant has a valid lien on the stock, which takes precedence over the right claimed by complainant, and directed the surrender of the certificate to defendant for the enforcement of its lien. From this decree complainant has appealed.

Counsel say the questions involved are:

(1) When did the obligation of Frank G. Jones to defendant mature, so that the statutory lien attached?

(2) Is complainant's ownership of the stock superior to defendant' statutory lien?

Under the banking laws of the State of Michigan, a bank's lien on its stockholders' stock is provided for by section 6098, 2 Comp. Laws (3 How. Stat. [2d Ed.] § 6404). We content ourselves with referring to the statute.

Counsel concede that, if the note of December 31, 1910, is a demand note, then complainant is without remedy; but it is insisted that it is not a demand note. Their contention is stated as follows:

" We have no quarrel with the doctrine that the holder of a demand note may consider it due from the moment it is given, and may bring suit thereon without first making formal demand for payment. But in the instant case the paper writing is something more than 'a demand note, pure and simple.' Nor is it necessary to resort to evidence *aliunde* to gather the intention of the parties. The instrument speaks for itself, and, in a voice that is unmistakable, proclaims that the parties elect to treat the words 'on demand' as of controlling significance; that they shall mean precisely what the language imports,

viz., that the note shall not mature until 'demand.' That such is the plain meaning of the contract is evidenced by the instrument as a whole, and particularly by that portion thereof wherein is conferred upon defendant the following grant of power respecting the 100 shares of stock of American Electric Fuse Company pledged to defendant as collateral security, viz. :

" ' And I hereby give to said bank or its assigns full authority and power to sell, transfer and convey the said collateral security, or any part thereof, on the maturity of this note or any time thereafter, or before the maturity of this note, in the event of said securities depreciating in value, at public or private sale, at its discretion,' etc.

" We are not seeking to change the plain terms of the contract.   On the contrary, we are asking for such an interpretation of the contract as will give force and effect to every provision thereof.   *   *   *   We think there can be no doubt of the meaning of the paper writing now under consideration.   Construing the instrument as a whole, the conclusion cannot be avoided that the agreement of the parties was that the note should not mature until demand for payment was made.   Otherwise, why provide that the stock of the American Electric Fuse Company pledged as collateral security, might be sold 'before the maturity of this note, in the event of said securities depreciating in value'?   It is not reasonable to suppose that the parties intended the obligation to be a demand note, pure and simple, due from the moment it was given, when the plain language of the instrument contemplates that sufficient time might elapse before the maturity of the note to allow the collateral security to depreciate."

We do not place the same construction upon the instrument as do counsel.   The note was written upon a blank in common use by the bank when it took collateral security for its debt, and was worded to meet the actual situation growing out of debts evidenced by demand paper or time paper, as the debt happened to be.   There is nothing that indicates an intention to change the rule governing the time when demand paper becomes due.   The collateral was given, not only to secure the debt evidenced by the note, but "any other indebtedness by me to said bank."

We think that the rule stated in *Citizens' Sav. Bank*
*v. Vaughan*, 115 Mich. 156 (73 N. W. 143), and the cases
cited therein, apply here.   See, also, *Bronson Electric Co.*
v. *Rheubottom*, 122 Mich. 608 (81 N. W. 563).

The decree of the court below is affirmed, with costs.

STEERE, C. J., and MCALVAY, BROOKE, KUHN, STONE,
and BIRD, JJ., concurred.   OSTRANDER, J., did not sit.