## PORTER v. MARINE SAVINGS BANK.

1. BANKS AND BANKING—CORPORATIONS—STOCK—LIEN.

No lien for an indebtedness due from the record owner of bank stock to the corporation attached where the stock did not belong to the apparent holder, who was a mere trustee, and the true beneficiary brought suit to compel the corporation to recognize her interest and transfer it on the books in her name, and where the evidence showed that the bank cashier knew the facts and had notice of complainant's rights.

2. SAME—EVIDENCE—OWNERSHIP—PRESUMPTIONS.

The presumption that the person in whose name stock is held is the true owner is *prima facie* and rebuttable.

3. SAME.

Persons who are not charged with notice of the trust may deal with such holder of record in good faith without being affected with the trust, and the books are *prima facie* evidence of title in the stockholder of record.

4. SAME—EQUITY—STOCKHOLDERS—BOOKS OF RECORD.

Upon the refusal or neglect to transfer the trust stock to the name of the true and beneficial owner, the *cestui qui trust* may obtain a decree of the court of equity compelling the corporation to recognize her rights.

Appeal from St. Clair; Law, J. Submitted April 27, 1915. (Docket No. 154.) Decided June 7, 1915.

Bill by Faye L. Porter against the Marine Savings Bank and others to require defendant bank to transfer certain stock to complainant's name. From a decree for complainant, defendants appeal. Affirmed.

*P. H. Phillips*, for complainant.

*Walsh & Walsh*, for defendants.

STONE, J. The learned circuit judge, who heard this case in the circuit court filed a written opinion which so clearly sets forth the conceded facts, and the law of the case, that we insert it here:

"Complainant in her bill of complaint alleges that she is the owner of 26 shares of the capital stock of the defendant bank, which she inherited from the estate of her mother, Alice E. Porter, and that this stands on the books of the bank in the name of L. Recor; that she has caused a demand to be made upon the proper officers of the bank that this stock be transferred to her and a certificate therefor issued in her name and delivered to her; and that this demand has been refused. She prays the court to decree that she is the owner of the said 26 shares of stock and to require the proper officers of defendant bank to transfer said stock to her name and to issue to her a certificate therefor.

"The defendants have answered. To the answer is added a cross-bill in which the defendant bank claims a lien on the stock claimed by complainant for the debt of Lambert Recor, in whose name the stock stands on the books of the bank. Defendants pray that the court declare that the bank has a lien on said stock and decree a foreclosure thereof.

"The following statement of facts is taken from complainant's brief and is in accordance with the testimony offered at the hearing:

" 'John W. Porter, deceased, on the 17th day of January, 1900, and at the time of his death he was and had been for a long number of years cashier of the Commercial Bank of the City

of Port Huron.   A number of years prior to his death, Mr.
Porter, in company with George W. Carman, owned and oper-
ated a private bank in the city of Marine City, Mich.
Later they organized a State bank known as the Marine Sav-
ings Bank, which took over the assets of the private bank.   Mr.
Porter was elected the first president of the bank and Mr. Car-
man its cashier.   Mr. Porter continued to hold the office of
president of that bank up to the time of his death, and Mr.
Carman has been continuously, and still is, cashier of the bank.
Mr. Porter in his lifetime owned 100 shares of the stock of the
bank, which he continued to own up to the time of his death.
He died testate, leaving surviving him Alice E. Porter, widow,
Rhoda E. Porter, Faye L. Porter, and Lloyd S. Porter, children.
By the terms of his will his wife was made sole legatee and
executrix and the stock above mentioned came into her posses-
sion.

" 'At the time of Mr. Porter's death, this stock was repre-
sented by three certificates; No. 48 for 10 shares, No. 62 for
50 shares, and No. 76 for 40 shares, the first certificate stand-
ing of record in the name of Mr. Porter, and the other two in
the name of Robert J. Porter, a brother.   The certificates stand-
ing in the name of Robert J. Porter were indorsed by him in
blank and were in the possession of Mr. John W. Porter.   On
the 15th day of May, 1901, these certificates were surrendered
by Mrs. Porter and new certificates issued in lieu thereof as
follows:   Certificates Nos. 95, 96, 97, for 50 shares, 40 shares,
and 10 shares, respectively.   They were all issued in the name
of Hattie Skinner, who was Mrs. Porter's stepmother, but were
at once indorsed by Mrs. Skinner and were at all times in the
possession of Mrs. Porter.

" 'Subsequently, on the 8th day of October, 1904, Mrs. Porter
surrendered these certificates and had issued in lieu thereof
certificates Nos. 112, 113, 114, 115, for 10, 20, 20, and 50 shares,
respectively.   These certificates were all issued in the name of
L. Recor, being immediately indorsed by him and were at all
times in the possession of Mrs. Porter.

" 'In 1905, Mr. Carman, cashier of the bank, began negotia-
tions with Mrs. Porter and her brother, George A. Skinner, for
the purchase of some of this stock.   Mr. Skinner was assisting
his sister in the management of her affairs, and acting as her
agent, which he continued to do up to the time of her death.
At the time the negotiations began, Mr. Carman stated to Mr.
Skinner that, this stock all being owned by a nonresident (Mrs.
Porter having taken up her residence in Detroit), it was of

little benefit to the bank, and that he desired to interest some citizens of Marine City with a view to having them purchase some of the stock for the reason that it would be advantageous to his bank so to do. In consequence, and on the 3d day of January, 1905, Mr. Carman sold 10 shares to Elizabeth Fitzgerald, Mrs. Porter surrendering certificate No. 112 for this purpose, and certificate No. 116 was issued to the purchaser for the same number of shares. Thereafter, on the 6th day of March, 1905, Mr. Carman sold 10 shares of the stock as follows: 2 shares to Andrew Frederick, 2 shares to Joseph Blattert, 3 shares to Charles Dupont, and 3 shares to L. Recor. To conclude the transaction Mrs. Porter surrendered stock certificate No. 113 for 20 shares, and in lieu thereof there was issued certificates as follows: 117 for 2 shares, 118 for 2 shares, 120 for 3 shares, 123 for 3 shares, and 121 for 10 shares. The first four certificates were issued to the purchasers above named, and certificate No. 121 was issued in the name of L. Recor and was immediately indorsed by him and forwarded by Mr. Carman to Mr. Skinner on behalf of Mrs. Porter. When the stock was sold to Mrs. Fitzgerald by Mr. Carman, a draft was forwarded by him to Mr. Skinner for the purchase price. Likewise when the next 10 shares of stock were sold by Mr. Carman he forwarded a draft of the defendant bank to Mr. Skinner for the amount obtained on the sale, together with certificate No. 121.

"'Mrs. Porter died intestate on the 29th day of December, 1905. Mr. Skinner had been conducting her affairs under a power of attorney for a period of upwards of a year prior to her death. On the 3d day of January, 1906, he applied for administration of her estate and was appointed administrator by the Wayne county probate court. On the 8th day of January, 1909, Mr. Skinner was appointed guardian of Lloyd S. Porter, who was a minor and did not attain his majority until March, 1912.

"'On the 16th of August, 1909, Mr. Skinner presented certificates Nos. 114, 115, and 121 to the defendant bank and had issued in lieu thereof certificates Nos. 154, 155, 156, and 157, the first three for 26 shares each, and No. 157 for 2 shares. This was done for the purpose of dividing the stock between the three heirs, Rhoda, Faye, and Lloyd S. Porter; the two shares being taken in a separate certificate on account of the fact that it was not advisable to issue fractions of a share. The new certificates were issued as follows: The first named, No. 154, to Rhoda E. Porter, and the other three in the name of

L. Recor. The last three certificates at the time of issue were all immediately indorsed by Mr. Recor and were at no time out of Mr. Skinner's possession.

" 'During the lifetime of Mrs. Porter, and up to the year 1910, all of the dividends payable upon the stock in question were paid either to Mrs. Porter or to Mr. Skinner. The dividends were drawn to the order of L. Recor, but his name was indorsed thereon, per George A. Skinner, and the checks were all paid to July, 1910.

" 'In August, 1911, certificates Nos. 155, 156, and 157 were presented to the bank and demand made for transfer as follows: 26 shares to Faye L. Porter, 26 shares to George A. Skinner, as guardian of Lloyd S. Porter, and 2 shares to George A. Skinner as trustee for the three heirs of Mrs. Porter. This demand was refused by the bank. Thereafter, and prior to the commencement of this suit, another demand was made for transfer as aforesaid, but this demand was also refused. There can be no question under the record but that Mr. Carman, the cashier of the bank, was at all times advised of who the actual owners of this stock was or were, and that Mr. Recor never did own any of the stock.'

"I hereby add the following as a part of this finding:

"At the times the demands for a transfer of this stock were made as above stated, Lambert Recor was indebted to the defendant bank in an amount exceeding the value of the stock, and this indebtedness was past due; but the officials of the bank did not rely upon the Porter stock as security at the time any of these loans to Mr. Recor were made.

"On the 16th day of August, 1909, when Mr. Skinner presented certificates Nos. 114, 115, and 121 to defendant bank and had issued three certificates Nos. 154, 155, 156, for 26 shares each, and one certificate, No. 157, for 2 shares, he was acting as administrator of the estate of his sister, Alice E. Porter, deceased, and as guardian of the minor, Lloyd S. Porter. Mr. Carman, as cashier of the bank, knew that Mr. Skinner was acting in these capacities, and must be held to have known that this transfer of stock and the issuance of the four certificates were for the purpose of making an equal division of the 80 shares of stock belonging to the estate of Alice E. Porter among her three children who inherited her property.

"There can be no doubt but that the 100 shares of stock in defendant bank which were owned by John W. Porter from the time of the organization of the bank until his death, and which his wife, Alice E. Porter, acquired, as a legatee of John W. Porter, and 80 shares of which came to the children of Alice E. Porter as the heirs of their mother, have been issued at different times in the names of third parties to escape the high rate of local taxation which prevailed in the place of the residence of the real owner, or owners. This scheme should not be approved by equity courts. If an owner of bank stock thus endeavors to conceal it in order to escape his just share of the public tax burden and permits some other person to remain as the registered owner, a court of equity should not decree that he has the right to recover the stock against a bank which claims a statutory lien on the stock for a past due debt of the registered owner. Certainly not, where the officials of the bank are ignorant of the real ownership of the stock. But in this case the bank officials must be charged with full knowledge of the ownership. Moreover, on the 16th of August, 1909, when Mr. Skinner presented certificates Nos. 114, 115, and 121 to the defendant bank and had issued in lieu thereof certificate No. 154 for 26 shares to Rhoda E. Porter, certificates Nos. 155 and 156 for 26 shares each in the name of L. Recor, and certificate No. 157 for 2 shares in the name of L. Recor, Mr. Skinner was acting in a trust capacity as administrator of the estate of Alice E. Porter and as guardian of Lloyd S. Porter. Mr. Carman, as cashier of the defendant bank, knew this and knew that Mr. Skinner's object in dividing the 80 shares of stock was to distribute it among the heirs of Mrs. Porter. Mr. Skinner had no right to take certificates Nos. 155, 156, and 157 in the name of L. Recor. Complainant cannot be charged with connivance in or condonation of the wrong thus perpetrated against herself and her brother.

"In the able brief filed by the solicitor for the defendants, it is argued with much force that the statute (3 How. Stat. [2d Ed.] § 6404), which gives a bank a lien on the stock of the registered owner should prevail. The object of this statute is to give protection to banks, not to enable the banks to do injustice.

A bank has no lien on the stock of its stockholders at common law. 5 Cyc. p. 439.

"Statutory liens have always been looked upon with jealousy and strictly construed. 25 Cyc. p. 662.

"A lien will not attach to stock held in trust when the bank has knowledge it is so held. 5 Cyc. p. 441.

"Under the determined facts in this case, it must be held that the knowledge of Mr. Carman, its cashier, is the knowledge of the defendant bank, and that the legal effect of this knowledge is to free the stock from any lien as against the plain rights of complainant.

"For direct authority as to the effect of notice to the president of a bank of the transfer of stock, see the well-reasoned case of *Curtice* v. *County Bank,* 118 Fed. 390 (56 C. C. A. 174). This case holds that:

"'The president of a bank, to whom a pledgee of stock exhibited the certificate held by him to ascertain with certainty that it had been regularly issued, stating the fact of the pledge, received such information while acting in his official capacity, and the bank was thereby charged with notice of the pledge, so as to render its statutory lien on the stock for a loan subsequently made to the pledgor, although some two or three years afterwards, subject to the rights of the pledgee, whose debt had not been paid.'

"In *Just* v. *Savings Bank,* 132 Mich. 600 [94 N. W. 200], it is held that:

"'A *bona fide* purchaser or pledgee of bank stock for value does not take it subject to the bank's lien * * * for a debt subsequently falling due, where the bank has notice of the purchaser's or pledgee's rights.'

"Under these authorities as applied to the determined facts in this case, Mr. Carman, as cashier of the defendant bank, and consequently the corporate body, the bank itself, must be held to have known that this stock in question belonged, first, to John W. Porter, then to his wife, Alice E. Porter, and after her death to the heirs of Alice E. Porter. The bank must be held to have known when Mr. Skinner took out certificates Nos. 155, 156, and 157, on August 16, 1909, that he was acting in a trust capacity, and that he had no right to take them out in the name of Mr. Recor, and that the stock still belonged to the

heirs of Alice E. Porter. At this time neither Mr. Carman nor any officer of the defendant bank seemed to have any idea that the bank had any lien upon this stock.

"A decree may be entered declaring complainant to be the owner of said certificate No. 156 for 26 shares of the stock of the defendant bank, free and clear of any liens in favor of defendant bank, and requiring the proper officials of the defendant bank to transfer this stock to complainant's name and issue to her a certificate therefor on the surrender of certificate No. 156. The bill of complaint does not contain a prayer specifically asking that the defendant bank account for and pay to her the past due dividends on her stock, but I think this relief may be granted under the prayer for general relief, if complainant so desires. Complainant is entitled to recover her costs in this suit."

The proposition that a lien will not attach to stock held in trust, where the bank has knowledge it is so held, is well supported by the authorities. *Alexandria Mechanics' Bank* v. *Seton,* 1 Pet. (U. S.) 299. In that case, as here, the bill was filed against the bank to compel the transfer of stock. The stock was standing in the name of one Lynn, but it was avowedly purchased and held by him as trustee for one Wise. The transfer had been refused because Lynn was a debtor to the bank. It became necessary to construe section 21 of the Act of Congress incorporating the bank. That section provided:

"That the shares of the capital stock shall be transferable at any time, according to such rules as may be established by the president and directors; but no stock shall be transferred, the holder thereof being indebted to the bank, until such debt be satisfied; except the president and directors shall otherwise order it." Act May 16, 1912, chap. 87, 2 U. S. Stat. 739.

The court said:

"The construction of the twenty-first section will depend upon the interpretation to be given to the

word 'holder,' as there used.   This term is not, neces-
sarily, restricted to the nominal holder.   It will ad-
mit of a broader and more enlarged meaning; and
may well be applied to the party really and bene-
ficially interested in the stock.   And there can be no
good reason why it should not be so applied, when the
bank is fully apprised of all circumstances in rela-
tion to the stock, and knows who is the real holder
thereof.   This provision was intended to put into the
hands of the bank additional security for debts due
from stockholders.   But, when it is known that the
person in whose name the stock stands has no inter-
est in it, he will acquire no credit upon the strength
of such stock; and that such was the understanding
of the bank, in this case, is clearly shown by the evi-
dence.   *   *   *   To permit the bank, under such
circumstances, to avail itself of this stock to satisfy
a debt contracted without any reference to it as se-
curity, and with full knowledge that Lynn held it in
trust for the complainants, would be repugnant to
the most obvious principles of justice and equity.
Suppose the trust had been expressly declared upon
the transfer book of the bank, would there be the least
color for sustaining the claim now set up?   And yet
Lynn would be the legal holder of the stock, in such
case, as much as in the one now before the court.
Full notice of a trust draws after it all the conse-
quences of an express declaration of the trust, as to
all persons chargeable with such notice."

In commenting upon the above-cited case, counsel
for defendants say:

"It is clear that, had the words 'registered holder'
been used in the statute, the court would have reach-
ed the opposite conclusion."

We cannot agree with counsel in this claim.   Ob-
viously the word "holder" in the above-quoted statute
meant holder of record, or "registered holder," and
the trust relation, if shown, would apply to one as
well as to the other.   There is no claim in the instant
case that the defendants did not know that the stock
in question belonged, at all times subsequent to 1892,
to the Porter family, or estate, and they knew that

Recor never claimed to own it, and he never obtained any credit upon the strength of it. See, also, *Prince Investment Co.* v. *Land Co.,* 68 Minn. 121 (70 N. W. 1079).

That a bank may waive its lien is beyond question. *National Bank* v. *Bank,* 105 U. S. 217, and cases cited in note. The last-cited case is also instructive upon the powers of a cashier.

That the one whose name appears on the stock book is presumed to be the real owner, unless some one else is clearly shown to be such, is undoubtedly the rule. It is equally clear that this is a rebuttable presumption. See cases cited in 5 Cyc. p. 442, note 3.

All persons, unaffected with notice to the contrary, are at liberty to act upon the faith of the title of stock being where it appears upon the corporation books to be. *Fisher* v. *Bank,* 5 Gray (Mass.), 373.

Where the name of an individual appears on the stock books of a corporation as a stockholder, this is presumptive evidence that he is so. The burden of proof is thrown then upon the defendant to show the contrary. *Hoagland* v. *Bell,* 36 Barb. (N. Y.) 57.

Books of a corporation are *prima facie* evidence as to who possesses the stock ownership. The object of the stock book in requiring transfer of stock to be recorded by the corporation is for the protection of the corporation, to enable it to know who are its members who are entitled to its dividends. And in the case of a dispute as to a right to vote the books of the corporation are *prima facie* evidence. If the real owner wishes to have his name, or the true state of facts, appear on the books, he has his remedy in equity to compel a transfer. *Hoppin* v. *Buffum,* 9 R. I. 513 (11 Am. Rep. 291). There is a line of cases holding that the record is deemed conclusive of ownership. An examination of the cases will show that they relate to stockholders' liability. See *Plumb* v.

*Bank of Enterprise,* 48 Kan. 484 (29 Pac. 699). That was a proceeding to enforce the individual liability of several stockholders of the Kansas Harvester Company, a corporation organized under the laws of Kansas. It was there held that the general rule is that the books of the corporation furnish evidence as to what persons are entitled to the rights and privileges of stockholders, and as to whom the creditors may look for payment in the event of insolvency of the corporation.

"Creditors of a corporation are presumed to have relied upon the books; and, where a stockholder sells his stock, but permits his name to stand upon the books of the corporation as one of its stockholders, he is in no condition to claim exemption from individual liability. If he has attempted in good faith to have the transfer recorded, and, having done all in his power to that end, fails, other conditions would arise; but where he negligently permits the stock to stand upon the books in his own name, and fails to do that which is necessary to transfer the legal title of the stock in accordance with the statute, he is not released from individual liability by the mere assignment and delivery of the certificates."

In such case the liability of the trustee remains, although he may look to his *cestui que trust* for reimbursement. *Richmond* v. *Irons,* 121 U. S. 27 (7 Sup. Ct. 788); *Hawkins* v. *Glenn,* 131 U. S. 319 (9 Sup. Ct. 739).

The equities of the case are with the complainant.

The decree of the circuit court is affirmed, with costs to the complainant.

BROOKE, C. J., and MCALVAY, KUHN, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.