## CHRISTENSEN v. BARBER.

1. EVIDENCE—REBUTTABLE PRESUMPTION AS TO BANK STOCK OWNER-SHIP.

    One whose name appears on the stock book of a bank is presumed to be the real owner unless someone else is clearly shown to be such.

2. BANKS AND BANKING—FINDING AS TO STOCK OWNERSHIP—STATUTORY LIABILITY.

    Finding that transferee of bank stock who refused acceptance of certificate of stock after having given notes for its purchase to bank officers who secured it from former owner was actual owner subject to statutory liability for assessment after bank closed *held*, correct under somewhat conflicting testimony (3 Comp. Laws 1929, § 11945).

3. APPEAL AND ERROR—QUESTIONS REVIEWABLE—ADMISSION OF EVIDENCE.

    Propriety of determination as to admission of certain items of testimony is not reviewed where record, entirely apart therefrom, is adequate to sustain finding by circuit judge that defendant was actual owner of bank stock at time bank ceased doing business (3 Comp. Laws 1929, § 11945).

Appeal from Montcalm; Hawley (Royal A.), J. Submitted April 5, 1938. (Docket No. 9, Calendar No. 39,649.) Decided June 6, 1938.

Action by H. A. Christensen, as receiver of the Neff State Bank, against Leslie T. Barber to enforce payment of statutory stockholder's liability on bank stock. Judgment for plaintiff. Defendant appeals. Affirmed.

*Frank A. Miller,* for plaintiff.

*Brake, Davis & Miel,* for defendant.

NORTH, J. This action was brought to enforce the payment of the statutory* stockholder's liability incident to bank stock alleged to be owned by defendant. The only question involved is whether the testimony sustains the holding of the circuit judge that defendant was a stockholder at the time the bank ceased doing business.

Prior to March 30, 1932, William Shafer was the owner of 10 shares of stock in the Neff State Bank; and on that date Shafer indorsed his certificate for this stock to defendant Leslie T. Barber, but Barber was not present at the time the indorsement was made. The testimony concerning the negotiations prior to the time the stock was so indorsed is somewhat conflicting.

There is testimony that Jacob M. Neff had told defendant that he wanted to get Mr. Shafer off the board of directors of the bank and sought to accomplish this by buying Mr. Shafer's stock and selling part of it to defendant to qualify him to take Shafer's place as a bank director. One evening during the early part of 1932, Mr. Ketchum, cashier of the bank, and Mr. Neff called at the home of the defendant and discussed the matter of defendant buying the stock. As to what took place that evening the defendant testified as follows:

"We had various conversations and I finally told Mr. Neff I wouldn't be interested without making an investigation and the matter was left that way. The terms were discussed. I further informed them that

---

* See 3 Comp. Laws 1929, § 11945 (Stat. Ann. § 23.52).—REPORTER.

I didn't have any ready money at that time, however, to spend for it and they agreed to take notes, and before they left an agreement was made that I was to give them two notes on the conditional purchase of this stock predicated upon my investigation, and if upon that investigation I decided I wanted the stock these notes were then to become the property of Mr. Neff and I in turn receive the stock. The notes were executed that evening in my home. * * * Mr. Ketchum took the notes with him."

But Mr. Neff testified that the notes were not executed on the evening referred to in defendant's testimony just above quoted, but instead they were executed sometime later. Mr. Neff further testified:

"As to whether Mr. Barber made any inquiry at all about the condition of the bank, he did before we made our transaction. He did something like a week before we finished the deal up, before he signed the notes."

Mr. Ketchum testified:

"To my recollection such notes were not drawn that night. * * * I was not present when these notes were signed and given to Mr. Neff. This transaction next came to my attention sometime within a week or ten days after Mr. Neff turned these notes in at the bank, when Mr. Barber called at the bank and asked if Mr. Neff had turned two notes in given by him to the bank. I told him that he had and he requested the return of the notes to him as he had investigated the condition of the bank and found that such investigation did not warrant him purchasing stock in the bank."

The notes referred to were executed by defendant and are dated April 4, 1932, one for $400 and one for $600, each payable to Jacob M. Neff. The assign-

ment and transfer of the 10 shares of bank stock direct to Barber by Shafer is dated March 30, 1932. The testimony of both Neff and Ketchum indicates that Neff had not purchased the stock at the time of his first conversation with Barber but rather that Neff wanted Barber to take some of the stock which he expected to obtain through his pending deal with Shafer. It is significant that the date on the notes is five days later than that on the assignment and transfer of the stock. From the foregoing it seems clear that the notes were executed at a time subsequent to the evening during which the matter was first considered.

The testimony of both Neff and Ketchum surely conforms to the more usual business practice of not signing notes and delivering them until the maker is certain that he desires to become obligated in the premises. It also seems far more probable that Ketchum is correct in his testimony as to when he first had possession of the notes and that the defendant is wrong in his contention that the notes were delivered to Ketchum on the occasion of the first interview.

Although defendant informed Ketchum before the bank closed that he did not want the stock and requested the return of his notes, he did not ask Neff about the return of his notes and it was not until shortly before the trial of this case and after the bank had closed that Neff learned that defendant refused to accept delivery of his stock certificate. And further, notwithstanding defendant knew the stock certificate had been issued to him because he was informed by Ketchum that it was ready for delivery, he did not say anything to the president of the bank about his refusals to accept the stock. The question

immediately arises as to why defendant said nothing to either Mr. Neff or the president of the bank. There seems to be only one reasonable explanation and that is that defendant Barber then considered himself the purchaser of the stock and that he had no valid ground for rescission of the sale. This conclusion is in accord with and strengthened by the following testimony of Neff:

"Mr. Ketchum said for him to come over and he would transfer it all over. Mr. Barber said you can have it transferred over to him (Barber); hold the certificate until he called for it."

Further, after the stockholders' meeting in January, 1933, Mr. Crum, president of the bank, talked with defendant concerning his election as a director. Crum testified:

"The only conversation that we had was that there was Mr. Ketchum and Mr. Barber and myself and we were talking in the lobby of the bank and I said to Mr. Barber, 'Well,' I said, 'you have been elected a director of the bank,' and he said, 'Well,' he says, 'I don't know as I can do you boys any good but what I can I will be glad to do.' That was all the conversation concerning it that I can remember."

Defendant denies that he was told by Crum he had been elected a director but states that he had heard of it on the street. His denial is not convincing because defendant admitted talking with Crum sometime in 1933 and then stating to him that he would do all he could. Defendant tries to explain this statement by saying that he meant to do what he could in his capacity as a representative in the State legislature. Defendant seemingly had no other stock in the bank and his failure to assert his lack of qualification to Mr. Crum, president of the bank, after

defendant was told or had heard that he had been elected a director certainly is rather persuasive that defendant considered himself a stockholder.

The stock ledger of the bank shows that Barber owned 10 shares of the bank stock as of April 4, 1932. In *Porter* v. *Marine Savings Bank,* 186 Mich. 355, 364, it is said:

"That the one whose name appears on the stock book (of a bank) is presumed to be the real owner, unless someone else is clearly shown to be such, is undoubtedly the rule. It is equally clear that this is a rebuttable presumption."

Our review of this record satisfies us of the correctness of the determination of the circuit judge in holding that defendant was the actual owner of the stock in question at the time the bank ceased doing business.

Appellant asserts the trial judge was in error in admitting certain items of testimony. There is no occasion for passing in detail upon the questions thus raised, because entirely apart from such items of evidence the record is adequate to sustain the result reached by the circuit judge. The judgment entered in the circuit court is affirmed, with costs to appellee.

WIEST, C. J., and BUTZEL, BUSHNELL, SHARPE, POTTER, CHANDLER, and McALLISTER, JJ., concurred.