No. 33,670

In the Matter of the Estate of Rodney J. Park, Deceased; VELNA FAY HESS, Administratrix of the Estate of Adella Park, Deceased; VELNA FAY HESS and DELLA V. PARK, *Appellees*, v. N. C. EMERY and AMERICAN SURETY COMPANY OF NEW YORK, *Appellants*.

(75 P. 2d 842)

Opinion filed January 29, 1938.

*F. D. Boyce,* of Minneapolis, *C. W. Burch, B. I. Litowich, LaRue Royce, L. E. Clevenger, E. S. Hampton* and *R. E. Haggart,* all of Salina, for the appellants.

*Lee Jackson,* of Minneapolis, *John J. McCurdy,* of Lincoln, *James E. Smith, E. H. Hatcher* and *Frank H. McFarland,* all of Topeka, for the appellees.

The opinion of the court was delivered by

ALLEN, J.: The heirs of Rodney J. Park, deceased, filed objections to the final settlement of N. C. Emery as administrator of the estate of Rodney J. Park. Upon appeal to the district court, amended objections were filed. The American Surety Company, as surety on the bond of the administrator, demurred to the amended objections (hereinafter referred to as plaintiffs' petition) upon the ground that the cause of action, if any, was barred by the statute of limitations, and for the reason that the petition did not state facts sufficient to constitute a cause of action. The demurrer was overruled and the surety company appeals.

Rodney J. Park, a resident of Ottawa county, Kansas, died intestate, June 5, 1928. N. C. Emery was appointed administrator and duly qualified as administrator of the estate, and gave bond in accordance with the provisions of the statute, now G. S. 1935, 22-313, dated and approved June 22, 1928. The defendant American Surety Company of New York signed the bond as surety.

The petition alleges:

"First: That on or about the 22d day of June, 1928, the said N. C. Emery was duly appointed administrator of the estate of Rodney J. Park, deceased, and that on or about the date of his said appointment, the exact date being to these appellants unknown, the said N. C. Emery as such administrator came into possession of and took under his control and custody and management as such administrator, eighteen (18) shares of the capital stock of the Farmers State Bank of Tescott, Kan., which said bank stock was owned by said Rodney J. Park, deceased, at the time of his death, and that thereafter and on or about the 23d day of June, 1928, the said bank stock was duly listed and appraised as part of said estate and was appraised by the appraisers appointed in said estate at a valuation of four thousand fifty dollars ($4,050), and at the time of said appraisement and for many months thereafter, the exact period of time appellants are unable to state, was of the actual and fair market value of the sum of $4,050, and that said bank stock could be readily sold at such time of appraisement and for many months thereafter for the sum of $4,050, and which fact of value and sale possibility was well known to the said N. C. Emery, as administrator of the estate of Rodney J. Park, deceased; that at the time of said appraisement and for more than three years thereafter the said N. C. Emery was cashier of said Farmers State Bank of Tescott, Kan., and was a stockholder in said bank and well knew the market value of said stock, and that within a period of ninety (90) days from and after the appraisement of said bank stock on or about the 23d day of June, 1928, and for many months thereafter, the exact time being to appellants unknown, the said N. C. Emery as administrator of said estate of said Rodney J. Park, deceased, could have sold said bank stock for the market value of $4,050.

"Appellants further state that at the time of his appointment as such administrator of said estate the said N. C. Emery furnished to said estate a surety bond in the sum of seven thousand dollars ($7,000) and that the said N. C. Emery executed said bond as principal and American Surety Company of New York as surety, and said bond was taken and approved by the probate judge of Ottawa county, Kansas, on the 22d day of June, 1928, and that a true and correct copy of said bond is hereto attached and marked "Exhibit A," and made a part of the objections filed herein.

"Appellants further state that for a period of approximately nine (9) months from and after the 22d day of June, 1928, the market value of said bank stock was of the sum of $225 per share or a total of $4,050, and said bank stock could have been readily sold by the said N. C. Emery, as such administrator, for the sum of $225 per share for said eighteen shares; that on or about the 28th day of July, 1928, the personal property of said estate, except the bank stock of eighteen shares and the Farmers Elevator stock of Tescott, Kan., one share, was sold by said administrator and that the only debts of said estate remaining was a note of approximately $2,200 owing by said Rodney J. Park in his lifetime to the Farmers State Bank of Tescott, Kan., and that if said bank stock had been sold by the said N. C. Emery within a period of approximately nine (9) months from and after June 23, 1928, the said stock would have brought the sum of $4,050, leaving a balance of $1,850 for distribution, but appellants allege and state the facts to be that the said N. C. Emery, as administrator, in bad faith and for personal gain and profit without any legal

cause or excuse therefor wrongfully and negligently failed and neglected to sell and dispose of said bank stock or any part thereof, and on account of the acts and conduct of the said N. C. Emery as such administrator and as hereinbefore stated in failing and neglecting to sell and dispose of said stock in said bank said shares of stock on or about the month of January, 1932, the exact time to appellants being unknown, became and continued to remain to and including the date of the filing of his pretended final account on or about the first day of March, 1935, wholly worthless and of no market value, and that by reason of the same the said appellants and said estate of said Rodney J. Parks, deceased, has been damaged in the sum of $4,050 and that said sum of $4,050 should bear interest at six percent per annum from the 25th day of September, 1928, the same being the statutory period within which said bank stock should have been sold under the provisions of section 22-601 of Revised Statutes of Kansas, 1923, together with such statutes of the state of Kansas relating to the said administration of the estates of deceased persons and that under said acts it became and was the duty of the said N. C. Emery as such administrator to sell and dispose of said bank stock as provided in said section 22-601; that these appellants are unable to state the exact time when they or either of them learned that the said bank stock had not been sold, but to the best of their knowledge, information and belief of appellants such fact was learned on or about the 14th day of August, 1932; that these appellants are unable to state how or in what manner said bank stock was not sold as such facts were and are wholly within the personal knowledge of the said N. C. Emery, and that said N. C. Emery wholly failed to comply wtih the provisions of section 22-601 as hereinbefore stated; that no finding was ever made by the probate court of Ottawa county, Kansas, that said bank stock and elevator stock or any part thereof was not necessary for the payment of debts and no order was ever made by said court ordering said stock not to be sold.

"Second: Appellants hereby incorporate in this their second ground of objection to the approval of said final account all of the allegations and averments contained in their first ground of objection insofar as the same may be relevant and pertinent and further state that the said N. C. Emery failed and neglected to sell and dispose of one (1) share of the capital stock of the Farmers Elevator Company of Tescott, Kan., appraised in said estate and of the market value of $130; that said stock could have been sold within the statutory period as provided in 22-601 for the sum of $130, and that said N. C. Emery wholly failed and neglected to sell said stock until at the time of the final settlement herein said stock was of the value of $10 per share and that by reason of the failure and neglect of the said N. C. Emery to sell and dispose of said stock said appellants and said estate have been damaged in the sum of $120.

"Third: Appellants further state that at the time of the appointment and qualification of the said N. C. Emery as administrator of said estate, and for many months thereafter, the said personal estate of the said Rodney J. Park, deceased, after the sale of all goods and chattels which sale was had on or about the 28th day of July, 1928, as shown by the records in said estate, was of the fair market value of $4,050 for the bank stock and $120 for the elevator stock; that the total indebtedness remaining was not to exceed $2,250, which amount

was owing to the Farmers State Bank of Tescott, Kan.; that the sale of said bank stock, which was of the market value of $225 per share, was more than sufficient to pay said claims and would have left a balance of approximately $1,800, and with the sale of said elevator stock for $130 there would have been on hand in said estate the sum of $1,930; that all of said stock should have been sold by said administrator within the statutory period as provided by section 22-601 as hereinbefore set out; that by reason of the failure and neglect of the said N. C. Emery, administrator, to sell said stock as hereinbefore set out the said N. C. Emery, administrator, from time to time paid interest in the sum of $800, as is more particularly shown by the records in said estate in the probate court of Ottawa county, Kansas, and which said records are hereby referred to and made a part hereof, but on account of the voluminous character of the same cannot be hereto attached.

. "Wherefore, the appellants herein named, by their attorneys Lee Jackson and John J. McCurdy, object to said final account and to the approval of the same for the reasons hereinbefore stated and that appellants should recover from said N. C. Emery and his said bondsmen the sum of $4,050 with interest at six percent from September 25, 1928, and for the further sum of $800 for interest paid as hereinbefore set out and for the further sum of $130 for said elevator stock."

Did the petition state a cause of action?

The statute, R. S. 22-601, in force at that time (since amended) provided:

"The executor or administrator shall, within three months after the date of his bond, sell the whole of the personal property belonging to the estate, which is liable to the payment of debts, and is assets in his hands to be administered, except the following: . . ."

At the time of his death Rodney J. Park was an officer and stockholder in the Farmers State Bank of Tescott, and owned eighteen shares of stock in the bank, which shares were listed in the inventory at $250 per share, the book value. He was also indebted to the same bank in the sum of $2,350, evidenced by his promissory note for that amount, bearing eight percent interest, no part of which had been paid.

. The administrator claimed that the bank stock was not liable to the payment of the general debts of the estate. This contention was based on the provisions of G. S. 1935, 9-153, which provides:

". . . but no transfer of stock shall be valid against a bank so long as the registered holder thereof shall be liable as principal debtor, surety or otherwise to the bank for any debt which shall be due and unpaid."

The administrator asserted that as Park was indebted to the bank, the statute gave the bank a first and prior lien on the stock for the payment of the debt due the bank, and that therefore he could not

have made a valid sale of the bank stock. It is claimed that G. S. 1935, 9-153, is a special law applicable to banks, and that it controls the earlier general law, section 22-601, which requires the administrator within three months after the date of his bond to sell the whole of the personal property. The case *Lithas v. Marble,* 118 Kan. 752, 236 Pac. 823, is cited in support of this position.

It is not necessary to question this rule of statutory construction. It can have no application unless there is a conflict in the statutes. Our statute, G. S. 1935, 9-153, provides that "no transfer of stock shall be valid against a bank" so long as the registered holder shall be liable to the bank for a debt due and unpaid. This statute does not prevent the transfer of stock, but provides that the transferee shall take subject to the lien or claim of the bank. Thus in *Battey v. Bank,* 62 Kan. 384, 63 Pac. 437, it was stated:

"If an indebted stockholder were to transfer his stock free from any lien or claim of the bank, it might result in an impairment of the capital, and so, to protect the capital and customers of the bank, the legislature created a lien and placed a limitation in the statute which prevents the stockholder from transferring his stock even to a bona fide purchaser while his liability to the bank continues." (p. 388.)

It charged the purchaser of stock with constructive notice of the lien. In *Faulkner v. Bank,* 77 Kan. 385, 94 Pac. 153, it was held the transfer was subject to the lien of the bank. The statute declares, and this court has consistently held, that as against the bank a transfer of the stock would not transfer a good title to stock free from the lien of the bank. (*Midwest State Bank v. Sandidge,* 131 Kan. 339, 291 Pac. 766.) It does not affect the right or duty of the administrator to sell the bank stock listed in the inventory; it only requires that any liability of the transferor to the bank be paid before an absolute title can be given the purchaser. The transferee is charged with notice of the lien or claim of the bank. It does not limit the right of the administrator to sell subject to the lien. The purpose of the statute was to protect the bank and its customers. When the debt of the bank is paid the lien is discharged. It is obvious, therefore, that there is no conflict between the statutes G. S. 1935, 22-601, requiring the administrator to sell the whole of the personal property within three months, and G. S. 1935, 9-153, which gives the bank a lien on the stock where the stockholder is liable to the bank for any debt which is due and unpaid. To hold that the stock could not be sold at all might defeat the very purpose of the statute, for, if the stock was the only asset of the estate, and the stock could not be

sold and no other funds were available to pay the debt due the bank, it would result in a stalemate, injurious alike to the estate and the bank. We think the petition stated a cause of action.

Was the cause of action barred by the statute of limitations?

Appellants contend that any cause of action for failure of the administrator to sell the bank stock accrued at the expiration of three months after the date of the bond, and therefore accrued on September 22, 1928; that the cause of action arose from the default of the administrator to comply with G. S. 1935, 22-601, and the three-year statute of limitations, G. S. 1935, 60-306, *second,* is applicable. Our attention is directed to sections 22-1001 to 22-1008, which prescribe when proceedings may be brought against administrators and their sureties, and particularly to section 22-1004, which provides:

"Whenever the executor or administrator has failed to perform his duty in any other particular than those above specified, any creditor, next of kin, legatee, administrator or other person aggrieved by such failure, may sue upon the bond."

We are unable to agree with the contentions of the appellants.

In *Stratton v. McCandless,* 27 Kan. 296, an action was brought in the district court on the administrator's bond. The court said:

"It must be remembered that this is an action on a penal bond against an administrator, who is under the general control and direction of the probate court, and against sureties on the bond, who have personally committed no wrong and are guilty of no dereliction of duty. This action attempts to take a matter which properly and legitimately belongs to the jurisdiction of the probate court, and a matter which ought to be settled and determined in that court, and to place it within a jurisdiction which has no general control over the affairs of the estate. And it attempts to take this matter from the jurisdiction of the probate court while the administrator is still acting, while the estate is still in process of settlement, and while the probate court has ample jurisdiction over both the administrator and the estate. . . . In cases of this kind, where the administrator is still acting, and the estate is not settled, and the probate court has complete and ample jurisdiction over the administrator and over the estate, actions in other jurisdictions, against the administrator and his sureties, on the administrator's bond, should not be encouraged (see reasoning in *Johnson v. Cain,* 15 Kan. 532); and where the question of the sufficiency of the petition in such cases arises upon demurrer, the petition should be held to be insufficient, unless the facts are stated in detail, and clearly show a cause of action." (pp. 305, 306.)

In *Hudson v. Barratt,* 62 Kan. 137, 61 Pac. 737, the syllabus reads:

"Where the estate of a deceased person is in process of settlement in the probate court, and an accounting has not been had with a former executor therein, and there has been no refusal by such executor to make a full and

final accounting, and where a full settlement may be required and an adequate remedy had in that court, no occasion exists to invoke the equitable jurisdiction of the district court, or for interference by that court with the settlement in the probate court; and in such case an action cannot be maintained on the executor's bond until an accounting has been had in the proper tribunal, a liability ascertained, and an opportunity afforded the former executor to discharge it."

The question again came before this court in the recent case of *Fry v. Riley*, 131 Kan. 252, 291 Pac. 748. In that case an attempt was made to maintain an independent action against an administrator while the estate was still open. After a careful consideration of the statutes and our prior decisions, it was held that where the probate court was exercising jurisdiction in the settlement of an estate, and the matter was still pending in that court, the district court was without jurisdiction to entertain an action under sections 22-1001, 22-1002 and 22-1004 of G. S. 1935.

In the case at bar the administrator and his surety gave a bond conditioned according to law. That bond bound him to administer according to law all the moneys, goods, chattels, rights and credits of the deceased, to render true accounts of his administration annually and at other times when required by the court or the law, and to pay any balance remaining upon the settlement of his accounts to such persons as the court or the law shall direct. (G. S. 1935, 22-313.)

Our statute, G. S. 1935, 22-904, provides that any administrator wishing to make a final settlement, shall file a report of his administration in the probate court, whereupon notice must be given to all interested in the estate of the hearing thereof. The sections following disclose the issues that are raised by such an application for final settlement with reference to the administration of the estate. Our statute, G. S. 1935, 22-909, states definitely the assets with which the administrator is to be charged, and section 22-912 provides:

"If any executor or administrator shall neglect to sell any portion of the personal property which he is bound by law to sell, and retains, consumes or disposes of the same for his own benefit, he shall be charged therewith at double the value affixed thereto by the appraisers."

The administrator in accepting the appointment and the surety in giving the bond submitted themselves to the jurisdiction and powers of the probate court, as above set forth, and became obligated to account for the management of the assets of the estate at the times and to the extent provided by law. The plain intention of the statutes referred to is that the acts of the administrator shall be subject to full

and complete examination and determination upon final settlement. Moreover, in order for an administrator to secure his discharge and the release of his surety, he must file his petition and ask for such determination and final settlement. (G. S. 1935, 22-904.)

It is clear no cause of action could arise on the bond of the administrator in this case until final settlement in the probate court.

It is urged that inasmuch as the petition for removal, filed in February, 1932, has not been vigorously pressed, the heirs should be held to be guilty of laches. But that was filed by only one of the heirs, and could not bind the others. Besides, its filing certainly gave notice to the administrator that at least one heir was dissatisfied with his management and expected to charge him in his accounts with the loss sustained, and the petition was still pending undisposed of when the administrator made application for final accounting. The court still had jurisdiction to act upon it, notwithstanding the lapse of time. It had not been dismissed or withdrawn. (*Armourdale State Bank v. Hoel*, 120 Kan. 130, 242 Pac. 481.)

No reason appears why the estate could not have been closed within the statutory period, and the administrator cannot be permitted to urge laches or the statute of limitations against a claim of maladministration by the heirs by reason of the lapse of time caused by his delay in filing his petition for final settlement until March 1, 1935. The heirs, on the other hand, had a right to await final settlement and make such claims then against the administrator as they might have because of his acts in the management of the estate.

There is one other reason why the statute of limitations is not applicable. Our code of civil procedure divides remedies into two classes, "actions" and "special proceedings." An action is defined as an ordinary proceeding in a court of justice by which a party prosecutes another party for the enforcement or protection of a right, the redress or prevention of a wrong or the punishment of a public offense. (G. S. 1935, 60-103, 60-104.)

The administration proceeding in the probate court, therefore, is not an "action," but is a "special proceeding." In *Lanning v. Gay*, 70 Kan. 353, 78 Pac. 810, it was held that the probating of a will is a "special proceeding."

Our statute, G. S. 1935, 60-306, containing the limitation provision sought to be applied here is confined in its scope of operation to "civil actions," and consequently does not govern remedies in "special proceedings" such as in the administration of estates, and that

this was the intention of the legislature is evident from the provisions of G. S. 1935, 60-3823, which provides that:

"Until the legislature shall otherwise provide, this code shall not affect . . . proceedings under the statutes for the settlement of estates of deceased persons, . . ."

In *Thomas v. Williams*, 80 Kan. 632, 103 Pac. 772, it was contended that the general statute of limitations applied to proceedings in the probate court. Mr. Justice Mason, speaking for the court, said:

"The plaintiffs in error invoke the statute (Civ. Code, sec. 18, paragraph 6) requiring an action for relief concerning which no other provision is made, to be brought within five years after the accrual of the cause of action. The case, however, does not fall within its terms, for the litigation which is begun by the filing of a petition in the probate court for the sale of real estate to pay the debts of the decedent does not constitute an action, but a special proceeding, or a part of a special proceeding. (Civ. Code, §§ 4, 5; *Lanning v. Gay*, 70 Kan. 353.)" (p. 634.)

We conclude the petition stated a cause of action for failure to sell the bank stock and the stock in the elevator company, and the action of the court in overruling the demurrer is sustained.

The judgment is affirmed.