No. 34,165

W. C. Gould, as Executor of the Estate of Walter Frederic Pine, Deceased, *Appellant,* v. The Fidelity State Bank of Dodge City, *Appellee.*

(87 P. 2d 594)

Opinion filed March 4, 1939.

W. C. *Gould*, of Dodge City, *pro se.*

Carl *Van Riper*, of Dodge City, for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This action was brought under the declaratory judgment act by W. C. Gould, as executor of the estate of Walter Frederic Pine, deceased, to obtain an interpretation of G. S. 1935, 9-153. The question presented was whether that statute gives the Fidelity State Bank of Dodge City, an unsecured creditor of the decedent stockholder, a lien on certain shares of the capital stock of that bank, held by the decedent at the time of his death. The district court held the bank had a lien on the stock and that its claim was prior and superior to the fifth-class claims allowed against the estate of the decedent. From that ruling the executor appeals.

From the pleadings and admissions of the parties the trial court made findings of fact and conclusions of law which are as follows:

"1. There is an actual controversy between the parties to this action;

"2. Walter Frederic Pine died testate, a resident of Ford county, Kansas, on January 24, 1938, and W. C. Gould was by the probate court of Ford county, Kansas, appointed executor of the last will and testament of Walter Frederic Pine, on February 24, 1938, and is now the qualified and acting executor of said will;

"3. At the time of his death, Walter Frederic Pine was the registered owner of two and one-half shares of the capital stock of the Fidelity State Bank, of Dodge City, Kan., a state bank organized and operating under the laws of the state of Kansas; that said stock is evidenced by a certificate a true copy of which is attached to the petition filed herein, and that the two and one-half shares are worth one hundred dollars a share.

"4. At the time of his death, Walter Frederic Pine was indebted to the Fidelity State Bank upon unsecured and matured personal notes a sum far in excess of the value of the stock of said bank owned by him; that such notes have never been paid, though claims have been filed and allowed upon them in probate court.

"5. The estate of Walter Frederic Pine is insolvent and will pay only a small percentage of the fifth-class claims filed and allowed against it in the probate court of Ford county, Kansas.

"6. The Fidelity State Bank has never taken any affirmative action to subject the capital stock of Walter Frederic Pine to the payment of his debts to the bank.

"7. The plaintiff has made due demand upon said bank for a transfer to him as executor of said stock upon the books of the bank; that said bank has refused and does refuse to make such transfer, for the sole reason that it claims a prior lien upon the stock under G. S. 1935, 9-153."

"CONCLUSIONS OF LAW

"1. The Fidelity State Bank, under G. S. 1935, 9-153, and under the facts hereinbefore found, has a lien upon the capital stock owned by Walter Frederic Pine to secure the payment of his debts to the bank, which lien is prior and superior to the claims of creditors whose claims against the estate of Walter Frederic Pine have been filed and allowed as fifth-class claims by the probate court of Ford county, Kansas.

"2. It is the duty of the executor to sell said stock and apply the proceeds from said sale toward the payment of the claim of the Fidelity State Bank against the estate of Walter Frederic Pine, in preference to the claims of the fifth class filed and allowed in the probate court of Ford county, Kansas.

"Judgment is entered in. accordance with the above and foregoing findings of fact and conclusions of law, at the cost of the plaintiff."

In the course of the opinion we shall refer to the appellant as the executor, and to the appellee as the bank. It appears the bank refused to comply with the request of the executor to make a transfer of the stock ownership on its books to him for the reason he advised the bank he had the right to sell the stock certificate free from the claims of the bank, and that he intended to so sell it and to have the proceeds applied to the payment of claims against the estate without regard to the bank's lien claim.

Touching finding number six, the bank informs us that while the record does not so disclose, it is a fact that it filed a claim in the probate court in which it asserted its claim constituted a lien on the stock. That statement is not denied by the executor. We therefore assume from finding number one this action was brought by the executor in the district court to obtain an adjudication of the lien question prior to the payment of claims in the probate court. The pertinent portion of G. S. 1935, 9-153, provides:

"The shares of stock of an incorporated bank shall be deemed personal property, and shall be transferred on the books of the bank in such manner as the bylaws thereof may direct; but no transfer of stock shall be valid against a bank so long as the registered holder thereof shall be liable as principal debtor, surety or otherwise to the bank for any debt which shall be due and unpaid, nor in such case shall any dividend, interest or profit be paid on such stock so long as such liabilities continue, but all such dividends, interest or profit shall be retained by the bank and applied to the discharge of such liabilities; and no stock shall be transferred on the books of any bank without the consent of the board of directors, where the registered holder thereof is in debt to the bank for any matured and unpaid obligation; . . ."

In *Battey v. Bank*, 62 Kan. 384, 63 Pac. 437, the question of whether this statute provided for a lien was presented. In considering that question this court also discussed the purpose of a lien provision, and said:

"There was a bylaw of the bank which expressly provided that the bank should have a first and prior lien on the stock for debts due to the bank by the owners of such stock. The statute already quoted, independent of the by-laws, clearly gives the bank a lien on the stock when the stockholder is liable as principal debtor, surety or otherwise to the bank for any debt due and unpaid. If an indebted stockholder were to transfer his stock free from any lien or claim of the bank, it might result in an impairment of the capital, and so, to protect the capital and customers of the bank, the legislature created a lien and placed a limitation in the statute which prevents the stockholder from transferring his stock even to a bona fide purchaser while his liability to the bank continues.

"The statute goes further than the giving of a lien to the bank, as it prohibits payment to the stockholder of any dividend, interest or profit on the stock while he is liable to the bank for indebtedness of any kind." (p. 388.)

The executor urges the reference to a lien in the above opinion was dictum, for the reason that in the instrument of assignment from the debtor to the trustee, a lien on the stock in favor of the bank was expressly reserved. In the contention the opinion constituted dictum as to the lien feature, we cannot concur. True, the assignment from the debtor to the trustee provided the liens on bank stock should not be deemed waived or effected by the agreement, but the question of whether the statute in fact created a lien remained in the case and was definitely decided. Moreover, the identical question as to whether that statute created a lien, was later presented in the case of *Faulkner v. Bank,* 77 Kan. 385, 94 Pac. 153, in which this court said: "The decision of the controversy depends upon the interpretation to be given to this statute." (p. 386.) The ruling was the same as in the Battey case, and both of those cases were recently cited in support of the same interpretation of the statute. (*In re Estate of Park,* 147 Kan. 142, 75 P. 2d 842.)

The executor strenuously urges that prior to the amendment in 1929 of another banking statute, to wit: R. S. 1923, 9-156, this court held that statute, although it declared certain transfers of property to be absolutely void as against double stock liability, stopped short of giving the bank a lien on such property for the double liability, and held that in the absence of such a lien provision no lien was in fact created, citing *Alter v. Johnson,* 127 Kan. 443, 273 Pac. 474. The executor contends the same reasoning is applicable in a proper interpretation of the instant statute. There are fundamental differences between the wording and purposes of the two statutes. R. S. 1923, 9-156, involved in the Alter case, was intended to prevent the transfer of a stockholder's property which is frequently resorted to

in order to avoid collection on his stockholders' liability. G. S. 1935, 9-153, was designed, in part, to prevent the transfer of the stock of a bank in order to protect the bank against the impairment of its capital. The latter statute, as indicated in the Battey case, also disclosed the intent of the legislature to protect the customers of a bank by declaring invalid any transfer of stock on its books so long as the registered holder thereof was liable to the bank as a debtor, surety or otherwise, on any debt which was due and unpaid. It also prohibited any payment to the stockholders of dividends, interest or profit on the stock while such liability continued. In view of those provisions this court held, as early as the Battey case in 1901, this statute created a lien on the stock held by the bank's debtor. When the legislature in 1929, and after the decision in the Alter case, *supra*, amended R. S. 1923, 9-156, so as to expressly provide the double liability should be a lien on property transferred by the debtor this court had already interpreted R. S. 1923, 9-153, as creating a lien on the capital stock of a debtor, and there was no occasion for amending that section so as to make it more expressly provide for the creation of a lien on the stock. Furthermore, we are forced to conclude if the legislature had not been satisfied with our former decisions construing that statute as creating a lien, it would have amended it to eliminate a lien on the capital stock. That it did not do. It follows our former decisions on the subject must stand. Moreover, these decisions are in harmony with what appears to be the general rule on the subject. In 7 C. J. 497, 498, the rule is stated thus:

"At common law a bank has no lien upon the stock of its stockholders for their indebtedness to it, but such a lien is frequently given by charter or general law, and it is often provided that a bank may refuse to transfer the stock of a stockholder who is indebted to it, so that a purchaser or assignee acquires only an equitable right to whatever may remain after discharging the stockholders' indebtedness."

In 14 C. J. 788 it is said:

"In some instances the statutes specifically declare that the corporation shall have a lien for any indebtedness owing to it by a stockholder; but the usual method of creating the lien is by a provision that shares shall be transferable only on the books of the corporation and that no stockholder shall be permitted to transfer so long as he is indebted to the corporation." (See, also, 14 C. J., § 1197, p. 791.)

The executor next contends if the bank held a lien on the stock of the debtor such lien was lost upon his death. The contention is

based upon the theory that if a voluntary transfer of ownership on the bank's books would have been invalid while the stockholder owed the bank, such rule cannot apply when an involuntary transfer results from the death of the stockholder where the decedent's estate is insolvent. He contends he was entitled to have the stock registered on the books of the bank in his name as executor and to sell the stock free from the lien. With that contention we cannot agree. The executor was only the titleholder of the stock ad interim; that is, he was the titleholder of the stock during the process of administration. (*Farmers State Bank v. Callahan,* 123 Kan. 638, 256 Pac. 961; *Alter v. Johnson,* supra, p. 446.) The lien was upon the stock. The debt of the registered stockholder remained due and unpaid and the stock remained charged with the lien notwithstanding the death of the owner thereof. The sale of the stock by the decedent during his lifetime, without transfer on the bank's books, could not have passed title to a purchaser free from the lien. (*Faulkner v. Bank,* supra.) The purchaser clearly could not have compelled the transfer of ownership on the books of the bank without the payment of the lien. The executor did not offer to discharge the lien. Obviously, the executor as the ad interim titleholder had no greater right than the decedent during his lifetime to sell the stock free from the lien. The stock was personal property of the decedent's estate. It could, of course, be sold by the executor for the payment of the decedent's debts. It could not, however, be sold free from the lien of the bank. (*In re Estate of Park,* supra.) The result is that to the extent of the bank's claim it has a lien on the proceeds of the sale of the stock. To the extent the claim of the bank exceeds the value of the stock the bank has a fifth-class claim against the decedent's estate.

The executor further urges the bank took no affirmative action to establish its lien and for that reason it is not entitled to priority over fifth-class claims. As we understand the situation it is this: at the time the instant action was filed by the executor, the bank had not filed a claim in the probate court in which it formally asserted its rights to a lien, but the time to assert its rights had not expired. The executor, however, had been informed of the bank's contention, and in order to have the merit of that contention determined, instituted this action. Subsequently, but in time, the bank filed its formal claim asserting a lien on the stock. Under these circumstances we know of no other affirmative action which

428

the bank was required to take in order to assert its lien. We think the trial court properly interpreted the statute, and the judgment is affirmed.